In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-2836

SHI CHEN,

*Petitioner,*

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A095-673-283

ARGUED FEBRUARY 24, 2009—DECIDED APRIL 28, 2010

Before ROVNER, WOOD, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Shi Chen is a native of China who as the fifth child in his family was born in severe violation of China's one-child policy. As a penalty for his unlawful birth, his mother was forcibly sterilized, and his parents were required to pay a large fine that equaled the family's annual income. Chen's aunt had earlier been forced to abort an illegal pregnancy and she, too, was thereafter involuntarily sterilized.

Children born illegally in China—known as the *hei haizi*—may not be listed on their family registry, the *hukou*, and are therefore denied many of the rights of full citizenship. Among these are the right to state-provided elementary schooling, higher education, and health care; the right to be included in the family's land and food allocation; and the right to move freely about the country. The *hei haizi* are also excluded from many jobs, may not acquire property, and in some cases are denied the right to marry and have children. Chen's parents paid large fines in order to list Chen on the back of their *hukou*; though this did not legalize him, it did allow him to attend school as long as his parents continued to pay the ongoing fines. Their ability to do so ran out before he reached high school.

When he was 17 years old, Chen left China for the United States and upon arrival was immediately detained by immigration officials. He applied for asylum, withholding of removal, and protection under the Convention Against Torture, arguing that he has been or will be persecuted because of his family's resistance to China's one-child policy and his membership in social groups that include his family and the *hei haizi*. See 8 U.S.C. § 1101(a)(42)(B) (persecution on account of political opinion includes persecution for resistance to a coercive population-control program). An Immigration Judge ("IJ") denied relief, and the Board of Immigration Appeals ("BIA") affirmed. Chen petitioned this court for review.

We grant the petition and remand to the immigration agency for further proceedings. The agency's analysis

of Chen's asylum claim was incomplete. The BIA failed to address Chen's claim of past persecution based on imputed political opinion—that is, the persecution that his mother and other family members suffered for their resistance to China's coercive population-control policy. His mother's forcible sterilization does not automatically entitle Chen to a finding of past persecution, but it may in combination with other evidence show that his family's resistance to China's population-control policy has been imputed to him. The BIA also failed to consider the cumulative significance of the hardships visited upon Chen and his family—and the future hardships he would face if returned—when evaluating Chen's fear of future persecution.

## I. Background

Chinese law significantly restricts the freedom of its citizens to bear children. No family is permitted to have more than two children, and Chinese law limits most families to one child. BUREAU OF DEMOCRACY, HUMAN RIGHTS & LABOR, U.S. DEPARTMENT OF STATE, CHINA: PROFILE OF ASYLUM CLAIMS AND COUNTRY CONDITIONS 21 (Oct. 2005) ("2005 COUNTRY REPORT"). Married couples are required to use birth control and must obtain official permission—in the form of a "birth permit"—before having a second child; some provinces require a birth permit for a first child as well. *Id.* at 22. Violations carry heavy fines—"social maintenance and compensation" fees—as well as other consequences for the parents, including job loss or demotion, imprison-

ment in a "population school," and forcible abortion or sterilization. *Id.* at 22-23.

Lawfully born Chinese children are listed on the family *hukou*, a registration document that entitles family members to the rights of full citizenship. Children born unlawfully are known as the *hei haizi* (meaning "black children") and are ineligible for registration on the *hukou.* IMMIGRATION & NATURALIZATION SERVICE, U.S. DEPARTMENT OF JUSTICE, PERSPECTIVE SERIES: CHINESE STATE BIRTH PLANNING IN THE 1990S AND BEYOND 38 (Sept. 2001). These "unplanned persons" are denied the right to state-provided elementary schooling, higher education, health care, and other governmental services and benefits. *Id.* As adults they are excluded from many jobs, may not purchase property, and may be denied the right to marry and have children. *Id.*; *see also* 2005 COUNTRY REPORT, at 23 (describing China's unregistered "floating" population).

Shi Chen was born in violation of China's one-child policy. He is a native of a small village in the Fujian province and is the youngest of five children and the only boy. Chen's parents spent many years evading the population-control authorities in their village, and his family paid dearly for his birth. Soon after Chen was born, his mother—who lived in hiding while pregnant to avoid a forced abortion—was involuntarily sterilized. His mother's sister had earlier been forced to abort an illegal pregnancy in her ninth month; afterward she was involuntarily sterilized. Chen's parents were required to pay a large fine equivalent to the family's annual

income as a penalty for his unlawful birth. They had to give away one of his sisters shortly after she was born because they could not afford to keep her. During an earlier pregnancy, Chen's mother fell off a ladder while fleeing from population-control authorities; she broke both her ankles, and the baby was stillborn.

Because Chen was born illegally, he could not be registered on the *hukou* and his family was denied the food and land allocation provided for lawfully born children. Payment of additional, ongoing fines allowed his family to list Chen's name on the *back* of their *hukou*. This permitted him to attend school as long as his parents continued to pay; they were able to do so through the equivalent of middle-school but not beyond. (Chen's father is a subsistence farmer and works odd jobs for extra income to support the family.) As a member of the *hei haizi*, Chen asserts that he is denied access to health care and other governmental services; is excluded from higher education and many types of employment; and will be denied the right to marry and have children, the right to own property, and the right to freely travel within and outside of China.

In 2004, when he was 17, Chen obtained false travel documents and fled China for the United States. Upon arrival in this country, he was detained by immigration officials and placed in removal proceedings. Chen conceded removability and applied for asylum, withholding of removal, and protection against removal under the Convention Against Torture ("CAT"). Citing his family's history of persecution for violating China's one-child

policy, he claimed he would be targeted for forced steril-ization and other persecution if returned to China.

The IJ who heard Chen's case credited his testimony (it was corroborated by several affidavits—most notably, one from his father) but rejected his claims for relief, concluding that Chen had not established past persecu-tion or a well-founded fear of future persecution. In the IJ's view, the economic plight his family suffered on account of his birth was not severe enough to be con-sidered past persecution, especially since Chen had never been detained by Chinese authorities and had been permitted to attend school. The IJ also rejected Chen's argument that he had a well-founded fear of persecution based on his status as a member of the *hei haizi*.

The BIA affirmed the IJ's decision but conducted its own analysis. Acknowledging that economic harm can constitute persecution in appropriate circumstances, the BIA held that the economic hardship Chen's family suffered was not significant enough to constitute persecu-tion. The BIA also rejected Chen's argument that he had a well-founded fear of future persecution; the agency based this conclusion on the fact that Chen had found employment after his family could no longer afford the fines necessary to permit him to attend school and had also obtained a Chinese passport before leaving the country. Finally, the BIA rejected Chen's claim that he would be targeted for sterilization based on his family's resistance to China's population-control policy. The BIA noted that it had never before held that "the political opinion of a parent who has been forcibly sterilized can

be imputed to that parent's child," and "current case-law [in the Seventh Circuit] does not allow the respondent's mother's political opinion to be imputed to him." Chen petitioned this court for review.

## II. Discussion

Where, as here, the BIA conducts its own analysis rather than supplementing or adopting the decision of the IJ, we review the BIA's decision. *Moab v. Gonzales*, 500 F.3d 656, 659 (7th Cir. 2007). The agency's legal conclusions are reviewed de novo. *See Mekhtiev v. Holder*, 559 F.3d 725, 729 (7th Cir. 2009). We will uphold the agency's factual findings so long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Chatta v. Mukasey*, 523 F.3d 748, 751 (7th Cir. 2008) (quotation marks omitted). Under this deferential standard of review, reversal is warranted only if "the evidence *compels* a different result"; we will not overturn the agency's findings simply because we might have decided the case differently. *Balogun v. Ashcroft*, 374 F.3d 492, 498 (7th Cir. 2004). On the other hand, remand may be warranted when the agency overlooks key aspects of an asylum-seeker's claim and might reach a different conclusion after a more complete evaluation of the record. *See Gomes v. Gonzales*, 473 F.3d 746, 752 (7th Cir. 2007); *Chitay-Pirir v. INS*, 169 F.3d 1079, 1081 (7th Cir. 1999).

The Attorney General has discretion to grant an alien asylum under the Immigration and Nationality Act if the

alien qualifies as a "refugee." 8 U.S.C. § 1158(b)(1). A refugee is a person who is unwilling or unable to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). A showing of past persecution will trigger a rebuttable presumption that the alien has a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). Even if an alien cannot show he has been subject to past persecution, he may nevertheless be eligible for asylum if he has a well-founded fear of future persecution. *Id.* § 208.13(b)(2). This requires the alien to show that his fear of persecution is both "subjectively genuine and objectively reasonable." *Bolante v. Mukasey*, 539 F.3d 790, 794 (7th Cir. 2008). To prevail under this standard, the alien must present "*specific*, *detailed* facts showing a good reason to fear that he . . . will be singled out for persecution." *Sayaxing v. INS*, 179 F.3d 515, 520 (7th Cir. 1999) (quotation marks omitted).

Chen's claims for relief are premised on his assertion that he has been or will be persecuted on account of political opinion and membership in a particular social group. Regarding the former ground, Chen's argument is based on § 1101(a)(42)(B), which provides that persons who have been subjected to certain coercive population-control measures or otherwise have been or will be subjected to persecution for resistance to a coercive population-control program are deemed to have been persecuted on account of their political opinion. More specifically:

> For purposes of determinations under this chapter, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42)(B). This subsection of the statute creates four classes of refugees: (1) those who have been forced to have an abortion or who have been involuntarily sterilized; (2) those who have been persecuted for failing or refusing a coerced abortion or sterilization or for other resistance to a coercive population-control program; (3) those who have a well-founded fear that they will be forced to have an abortion or be sterilized; and (4) those who have a well-founded fear that they will be persecuted for failing or refusing such procedures or for resisting a coercive population-control program. *See Lin v. Ashcroft*, 385 F.3d 748, 752-53 (7th Cir. 2004).

The Attorney General has concluded that only those who have themselves been forced to have an abortion or have been involuntarily sterilized fall into the first class of refugees. *Matter of J-S-*, 24 I. & N. Dec. 520, 527 (AG 2008); *see also* 8 C.F.R. § 1208.13(b)(1) (aliens who fall

into this category are automatically entitled to the presumption of a well-founded fear of future persecution). Overruling BIA precedent, *Matter of J-S-* held that an asylum-seeker whose spouse has suffered a forced abortion or sterilization is not per se eligible for asylum. Rather, the applicant must show that he or she personally suffered or will suffer persecution for resisting a coercive population-control program. *Matter of J-S-*, 24 I. & N. Dec. at 542; *accord Lin-Zheng v. Attorney General*, 557 F.3d 147 (3d Cir. 2009); *Shi Liang Lin v. U.S. Dep't of Justice*, 494 F.3d 296, 314 (2d Cir. 2007) (en banc).

Accordingly, under *Matter of J-S-*, evidence that the applicant's spouse was forced to abort a pregnancy or undergo involuntary sterilization is relevant to the applicant's claim but does not alone establish eligibility; the applicant must also present evidence of his or her own past persecution or reasonable fear of future persecution. *See Matter of J-S-*, 24 I. & N. Dec. at 534-35 ("Some spouses may not have 'resisted,' and in fact may have affirmatively supported, the forced abortion or sterilization procedure that was performed on the spouse who remains in China. . . . [A]pplicants must present proof, of which their spouse's treatment may be a part, of persecution for refusing to undergo forced abortion or sterilization procedures or for engaging in 'other resistance' to a coercive population control program, or of persecution on account of another ground for asylum enumerated in the Act."). The Attorney General's interpretation of § 1101(a)(42)(B) is entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and the rationale

of *Matter of J-S-* applies with equal force to the claim of an asylum-seeker like Chen whose *parent* has been forced to have an abortion or undergo sterilization. *See Chen v. U.S. Dep't of Justice*, 417 F.3d 303, 305 (2d Cir. 2005) (per curiam) ("[C]hildren are not *per se* as eligible for relief . . . as those directly victimized themselves."); *Zhang v. Gonzales*, 408 F.3d 1239, 1245-46 (9th Cir. 2005) (same); *Wang v. Gonzales*, 405 F.3d 134, 142-43 (3d Cir. 2005) (same).

So Chen does not fall into the first category of refugees created by § 1101(a)(42)(B). Under the rationale of *Matter of J-S-*, Chen is not automatically eligible for asylum because his mother was sterilized against her will. Nor does Chen fall into the second class of refugees; he has not "failed or refused" to be sterilized and has not otherwise "resisted" China's one-child policy. He may, however, fall within the third and fourth classes of refugees under § 1101(a)(42)(B)—those who have a well-founded fear of involuntary sterilization (forced abortion obviously is not at issue here), or those who fear persecution for refusing sterilization or otherwise resisting a coercive population-control program. Chen has consistently argued that he fears he will be involuntarily sterilized and otherwise persecuted because of his and his family's violation of China's one-child policy.

Chen's claim is thus based partly on a theory of imputed political opinion. He contends that Chinese population-control authorities either have imputed or will impute his parent's resistance to China's one-child policy to him. The BIA flatly rejected this argument based on a perceived lack of circuit precedent to support

it. To the contrary, however, it is well established in this
circuit that an alien may base a persecution claim on
imputed political opinion. Under this theory the alien
is asserting that his persecutors have mistreated or will
mistreat him because they attribute someone else's—
often a family member's—political beliefs to him. *See
Mema v. Gonzales*, 474 F.3d 412, 416 (7th Cir. 2007)
("[A]sylum is available to persons who have been perse-
cuted based on imputed political opinion, including
situations where a persecutor attributes the political
opinion of one or more family members to the asylum
applicant." (emphasis removed)); *Nakibuka v. Gonzales*,
421 F.3d 473, 478 (7th Cir. 2005); *Lwin v. INS*, 144 F.3d 505,
509-10 (7th Cir. 1998). To prevail on this sort of claim,
the alien must show that (1) his persecutors attributed
the political opinion of another to him, and (2) the at-
tributed opinion motivated or will motivate the perse-
cution. *Sankoh v. Mukasey*, 539 F.3d 456, 471 (7th Cir. 2008).

Chen argues that population-control authorities have
attributed or will attribute his parent's flagrant violation
of China's population-control program to him and that
he is therefore likely to be targeted for involuntary steril-
ization if returned to China. The Second and Ninth
Circuits have recognized that an asylum claim alleging
persecution for resistance to a coercive population-control
program under § 1101(a)(42)(B) may be partially based
on imputed political opinion—more specifically, such a
claim may rely in part on a parent's persecution for
resisting a coercive population-control program. *See Jiang
v. Gonzales*, 500 F.3d 137, 141 (2d Cir. 2007); *Zhang*, 408
F.3d at 1246-47; *Jie Lin v. Ashcroft*, 377 F.3d 1014, 1031

(9th Cir. 2004). This is a specific application of the more general imputed political-opinion theory—already established in this circuit—and we therefore follow the lead of these circuits in recognizing it here.

Our decision in *Chen v. Gonzales*, 457 F.3d 670, 674-75 (7th Cir. 2006), is not to the contrary. The alien in *Chen* had two children in the United States, intended to have more children in China, and feared she would be involuntarily sterilized. To support her claim, the alien submitted State Department reports and evidence that her parents had been involuntarily sterilized. We noted that this evidence did not compel the conclusion that the alien would be sterilized upon her return to China because the alien's parents had been "sterilized many years ago under circumstances bearing no relation to her present circumstances." *Id.* at 675.

Here, in contrast, Chen has submitted specific and detailed evidence tending to show that he and his family have been uniquely targeted by the population-control committee in their village based on their persistent resistance to China's one-child policy. He submitted evidence that his family spent many years hiding from population-control authorities in their village; his mother lost a child in utero when she fell trying to escape population-control authorities; his mother was forcibly sterilized after his birth; his aunt suffered a forcible abortion and was thereafter involuntarily sterilized; his parents had to give away one of his sisters because they could not afford her; and his family was subjected to significant economic hardship as a

result of their extreme resistance to China's one-child policy.

As we have noted, the BIA summarily rejected the imputed political-opinion basis of Chen's claim without analysis, having concluded that "current caselaw" in this circuit did not support it. But the concept of persecution based on imputed political opinion has long been recognized in this circuit, and Chen's claim falls comfortably within this theory of relief. Accordingly, remand is in order to give the BIA "the first opportunity to pass judgment on . . . [a] claim[] it previously ignored." *Hamdan v. Mukasey*, 528 F.3d 986, 992-93 (7th Cir. 2008). The agency should consider "the totality of the circumstances . . . to determine whether harm suffered by family members in combination with other factors may constitute past persecution of the applicant, even if government authorities neither directly harmed the applicant nor harmed the family member in order to target the applicant." *Jiang*, 500 F.3d at 141.

There is another reason to return this case to the agency: Chen also presented evidence that as a member of the *hei haizi*—a child ineligible for registration on the *hukou* because he was born in violation of China's population-control program—he has been and will continue to be deprived of many fundamental rights and governmental benefits. This evidence, he argued, both buttressed his claim of persecution based on political opinion and established a separate ground for relief based on persecution because of his membership in a particular social group. The BIA's treatment of this claim, too, was incomplete.

The agency did not evaluate the cumulative significance of these hardships when evaluating Chen's claim of past persecution (on political-opinion grounds *or* based on his membership in a particular social group); nor did the agency properly account for this evidence in evaluating the reasonableness of his fear of future persecution.

Many of the hardships Chen suffered as a *hei haizi* and will continue to face if returned to China are economic in nature. Because of his unlawful birth, Chen and his family were subjected to severe financial deprivation; this took the form of enormous fines—at his birth and thereafter to allow him to attend school—as well as the denial of the land and food allotment permitted to lawfully born children. His father testified via affidavit that as a result of these fines, the family—already very poor—often went hungry. Chen submitted evidence that as an unregistered person, he is denied access to government-provided higher education, health care (except that which can obtained at high cost on the black market), and many forms of employment.

It is well established that persecution can take the form of economic deprivation as well as physical mistreatment, *see, e.g.*, *Yun Jian Zhang v. Gonzales*, 495 F.3d 773, 777 (7th Cir. 2007); *Tarraf v. Gonzales*, 495 F.3d 525, 535 (7th Cir. 2007); a claim of persecution based on economic deprivation generally requires a showing of a "'deliberate imposition of severe economic disadvantage or the deprivation of liberty, food, housing, employment or other essentials of life,'" *Xiu Ling Chen v. Gonzales*, 489

F.3d 861, 863 (7th Cir. 2007) (quoting *In re T-Z-*, 24 I. & N. Dec. 163, 171 (BIA 2007) (emphasis removed in *Xiu Ling Chen*)). This does not mean, however, that the alien must establish a "total deprivation of livelihood on account of his protected status." *Koval v. Gonzales*, 418 F.3d 798, 805-06 (7th Cir. 2005) (internal quotation marks omitted).

Considered in the aggregate, the economic hardships imposed as a penalty for violation of China's population-control policy may, in appropriate cases, constitute persecution. The Third Circuit has concluded as much in a case involving a Chinese father of four who sought asylum based on the economic deprivations his family suffered because of their violation of China's one-child policy:

> [W]hile Li's family did not reach near-starvation levels, we can fairly say that the economic restrictions allegedly faced by the Li family were "severe." In the aggregate, a fine of more than a year and a half's salary; blacklisting from any government employment and from most other forms of legitimate employment; the loss of health benefits, school tuition, and food rations; and the confiscation of household furniture and appliances from a relatively poor family constitute deliberate imposition of severe economic disadvantage which could threaten his family's freedom if not their lives. Moreover, the economic harm in Li's case was deliberately imposed as a form of punishment because of his violation of China's population control policy, rather than being

the result of "natural" economic downturns or gener-
ally harsh conditions shared by others in China. We
hold that, when viewed in the aggregate, Li's allega-
tions amount to economic persecution.

*Li v. Attorney General*, 400 F.3d 157, 169 (3d Cir. 2005).

Beyond economic deprivations, Chen has presented
evidence that as a *hei haizi* he is deprived of other funda-
mental rights as well: He cannot acquire property or move
freely about the country, and may be denied the right
to marry and have children. We have often emphasized
the importance of evaluating the "cumulative signifi-
cance" of multiple claimed hardships in evaluating
asylum claims. *See Kholyavskiy v. Mukasey*, 540 F.3d 555,
571 (7th Cir. 2008). Here, however, the BIA dismissed
Chen's claim of persecution based on his status as a *hei
haizi* by reference to a solitary piece of evidence—the
fact that Chen was able to obtain a passport and there-
fore "was given the right to travel by the Chinese gov-
ernment." This is woefully inadequate. The BIA ignored
much of Chen's evidence and never addressed his argu-
ment about the combined effect of the economic and
noneconomic deprivations he and his family have
suffered and that he contends he will continue to suffer
if returned to China. *See Joshi v. Ashcroft*, 389 F.3d 732, 736-
37 (7th Cir. 2004) ("A decision that resolves a critical
factual question without mention of the principal
evidence cannot be considered adequately reasoned.").

We do not now conclude that the record compels a
conclusion that Chen suffered past persecution or has
an objectively reasonable fear of future persecution

based on imputed political opinion or membership in his family or the *hei haizi*, or both. Because the BIA's analysis flowed from a misapprehension of the state of this circuit's caselaw and was otherwise incomplete, these are matters for the BIA to address on remand, in light of the principles we have explained here and based on the totality of the evidence.

Accordingly, we GRANT the petition for review, VACATE the decision of the BIA, and REMAND for further proceedings consistent with this opinion.