In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2689

FATOUMATA KONE, LASANNA DIARRA, and
KAMISSA DIARRA,

*Petitioners*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent*.

Petition for Review of Orders of
the Board of Immigration Appeals.
Nos. A099-607-605, A099-607-606, A099-607-607

ARGUED MARCH 31, 2010—DECIDED AUGUST 31, 2010

Before MANION and WILLIAMS, *Circuit Judges*, and
DARRAH, *District Judge*.*

WILLIAMS, *Circuit Judge.* Lead petitioner Fatoumata Kone
("Kone"), her husband Lasanna Diarra ("Lasanna"),

---

* The Honorable John W. Darrah, United States District Court
for the Northern District of Illinois, Eastern Division, sitting
by designation.

and their oldest daughter Kamissa Diarra ("Kamissa") are natives and citizens of Mali. They entered the United States on August 18, 2001 and remained in the country after the expiration of their visas. Kone and Lasanna then had a second daughter, Mariam, who by virtue of her birth here is a United States citizen. In 2006, Kone, as lead petitioner for her family, filed for asylum, withholding of removal, and protection under the Convention Against Torture on the basis that if made to return to Mali, Mariam would be forced to undergo female genital mutilation ("FGM"), a common practice in Mali to which both her mother and sister have already been subjected. An immigration judge denied the application, finding the asylum petition untimely and denying other relief on the grounds that Kone could not make a "derivative" claim based on a threat of persecution to her daughter. The Board of Immigration Appeals ("BIA") affirmed the denial of relief, and Kone petitioned this court for review. Because the BIA did not address Kone's claim that FGM of her daughter would constitute direct psychological persecution of her parents, we remand for further consideration.

## I. BACKGROUND

Kone, Lassana, and Kamissa are natives and citizens of Mali and members of the Bambara ethnic group. Kone and her family entered the United States on August 18, 2001 on nonimmigrant B2 visas and remained in the country after they expired, living first in New York and then Chicago. In November 2004, Kone and Lassana had

a second daughter, Mariam, born a United States citizen. On January 5, 2006, Kone, as lead petitioner, filed an application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").[1] Kone sought asylum based on her fear that if her family were made to return to Mali, Mariam would be forced to undergo FGM just as her sister and mother had. Kone acknowledged that her asylum application had been filed outside of the one-year deadline (at that point it had been over four years), but stated that she had only recently become aware of the fact that she could apply.[2]

Kone, Lasanna, and Kamissa were deemed removable and issued Notices to Appear in Immigration Court. On July 10, 2007, a merits hearing was held before an Immigration Judge ("IJ"). At the hearing, Kone testified to the high likelihood that Mariam would be subjected to FGM if brought to Mali, where, she said, all female Bambara tribe members undergo the procedure. Kone's testimony regrettably is backed up by State Department statistics indicating that approximately 95% of all women in Mali have been subjected to FGM. *See* U.S. Department of State, 2009 Human Rights Report: Mali, http://www.state.gov/g/drl/rls/hrrpt/2009/af/135964.htm

---

[1] The United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, as implemented by 8 C.F.R. § 208.16(c).

[2] Because Kone is the lead petitioner, we refer to her alone throughout this opinion unless otherwise necessary.

(last visited August 3, 2010). Kone testified that she herself underwent FGM at the age of five, and that it had been performed on her first daughter Kamissa when she was two years old, without Kone's knowledge. Kone explained that a relative snatched Kamissa away while Kone was not home and performed the procedure under primitive conditions without anesthesia. She claimed that while she and her husband oppose FGM, they would not be able to prevent it from being similarly performed on Mariam. Kone stated that even if she and her husband maintained constant vigilance over Mariam, it was likely that she would still be forcibly taken from them so that the procedure could be performed. Kone also testified about the emotional trauma she would feel if FGM were in fact performed on her daughter against her will.

The IJ found Kone's testimony to be credible and determined that it was more likely than not that Mariam would be forced to undergo FGM if she were to go to Mali. However, the IJ denied all requested relief in an oral decision at the close of the hearing. The IJ first denied Kone's asylum claim as untimely under Section 208(a)(2) of the Immigration and Nationality Act ("INA"), which provides for a one-year time limit for asylum applications except for when the alien demonstrates changed or extraordinary circumstances warranting the delay. 8 U.S.C. § 1158(a); *see also* 8 C.F.R. § 1208.4(a). The IJ found that while Mariam's birth was a changed circumstance that excused part of the delay in applying for asylum, the application was still untimely because Kone had waited another 14 months

*after* the birth before filing. The IJ next denied Kone's claim for withholding of removal (for which there is no analogous time limit), ruling that Kone could not obtain withholding for herself based on potential hardship to her daughter. Relying on our decisions in *Olowo v. Ashcroft*, 368 F.3d 692 (7th Cir. 2004), and *Oforji v. Ashcroft*, 354 F.3d 609 (7th Cir. 2003), the IJ concluded that a petitioner cannot obtain "derivative" relief based on a fear that a non-petitioner child will undergo FGM. The IJ denied protection under the CAT for the same reasons he denied withholding of removal.

Kone appealed to the BIA and made two main arguments. She first argued that if Mariam were to be subjected to FGM in Mali, the anguish that her parents would suffer would constitute direct persecution of her parents under the CAT. Alternatively, Kone advanced a derivative asylum theory, arguing that while *Olowo* and *Oforji* foreclose derivative asylum based on the likelihood of FGM to a child in some situations, those cases are distinguishable because they did not involve a situation where *both* parents were in removal proceedings.

In the BIA's written ruling denying Kone's appeal, it concurred with the IJ's ruling that Kone's asylum application was untimely for having failed to file it within a reasonable time of the birth of Mariam. The BIA also agreed with the IJ's denial of withholding of removal and protection under the Convention Against Torture. The BIA cited *Olowo* and *Oforji* for the proposition that parents cannot establish derivative claims for relief based on potential hardship to their children,

and rejected Kone's argument that her situation was distinguishable. The BIA was silent, however, as to Kone's argument that FGM of Mariam against her parents' will could constitute direct persecution of her parents. Kone petitioned this court for review of the BIA's denial of withholding of removal and protection under the CAT.[3]

## II. ANALYSIS

When, like here, the BIA issues its own written analysis instead of summarily adopting that of the IJ, we review the BIA's decision. *Chen v. Holder*, 604 F.3d 324, 330 (7th Cir. 2010). We review the agency's legal conclusions de novo, *Atunnise v. Mukasey*, 523 F.3d 830, 835 (7th Cir. 2008), and factual findings for substantial evidence. *Huang v. Mukasey*, 525 F.3d 559, 564 (7th Cir. 2008). We will disturb factual findings only if

---

[3] Kone does not appeal the BIA's determination that her asylum application was untimely, recognizing that we lack jurisdiction to review that decision. 8 U.S.C. § 1158(a)(3); *see Ogayonne v. Mukasey*, 530 F.3d 514, 519 (7th Cir. 2008). Kone's only argument on appeal regarding the asylum portion of her application is that the agency erred when it did not consider an "independent claim for asylum" from her daughter Kamissa. Kone never raised this argument to the agency, and we cannot entertain it here. 8 U.S.C. § 1252(d)(1); *see also Ishitiaq v. Holder*, 578 F.3d 712, 717-18 (7th Cir. 2009). And in any event, Kamissa has never filed a freestanding application for asylum; her application was derivative of her mother's, who filed as lead petitioner on behalf of her family.

the evidence compels a conclusion contrary to that of the BIA. *Kedjouti v. Holder*, 571 F.3d 718, 721 (7th Cir. 2009).

While our review is deferential, remand is appropriate when the BIA "overlooks key aspects of an asylum-seeker's claim and might reach a different conclusion after a more complete evaluation of the record." *Chen*, 604 F.3d at 330; *see also Gonzales v. Thomas*, 547 U.S. 183, 186 (2006) (remand to agency is proper course when additional determination or explanation is necessary); *I.N.S. v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam) (same). Remand is proper for additional analysis if the BIA "has not adequately explained its result and it seems possible to us that the agency might be compelled to reach the opposite conclusion depending how it evaluates the record after remand." *Gomes v. Gonzales*, 473 F.3d 746, 752 (7th Cir. 2007).

We conclude that the BIA overlooked a key aspect of Kone's claim and that a more complete evaluation is necessary. *See Chen*, 604 F.3d at 330. The BIA effectively only addressed half of Kone's argument: it concluded that Kone could not assert a derivative claim based on potential hardship to her daughter, but failed to address her assertion that FGM of Mariam would also constitute *direct* persecution of her parents.

### A. Kone's Derivative Claim

The BIA rejected Kone's claim for derivative relief based on a threat of FGM to her daughter, relying on

our rulings in *Oforji* and *Olowo*.[4] In those cases, the petitioners, both Nigerian women who had undergone FGM, sought asylum and withholding of removal based on their fear their daughters would be subjected to FGM as well if brought to that country. In both cases, we rejected the petitioners' claims, holding that the parents could not make a derivative claim for asylum based on a likelihood of persecution not to themselves, but to their children. *See Olowo*, 368 F.3d at 701; *Oforji*, 354 F.3d at 618. In *Oforji*, we noted that in contrast to the cancellation-of-removal provision set forth in INA § 240A(b)(1), 8 U.S.C. § 1229a(b)(1), the statutory scheme for asylum does not permit consideration of hardship to a petitioner's children when determining eligibility. 354 F.3d at 616-17. We ruled that an alien parent "may not establish a derivative claim for asylum by pointing to potential hardship to the alien's United States citizen child in the event of the alien's deportation." *Id.* at 618. And a year later in *Olowo*, we again concluded that both the asylum and withholding of removal standards "require an applicant to demonstrate

---

[4] Kone also argues that she and her daughter are entitled to withholding of removal and protection under the CAT based on their own past persecution. The government correctly points out that Kone did not make this argument to the IJ or the BIA. The IJ found that Kone's claim was based "solely" on a fear of future persecution of her daughter, and Kone did not dispute this in her appeal to the BIA. Kone cannot seek judicial review of issues she did not raise before the BIA. 8 U.S.C § 1252(d)(1); *see also Zeqiri v. Mukasey*, 529 F.3d 364, 369-70 (7th Cir. 2008).

that she herself will be subject to persecution if removed, and do not encompass any consideration of persecution that may be suffered by others—even family members—who may be obliged to return with her . . . ." *Olowo*, 368 F.3d at 701; *see also Gumaneh v. Mukasey*, 535 F.3d 785, 789 (8th Cir. 2008) ("an applicant may not establish a derivative claim for withholding of removal based upon the applicant's child's fear of persecution"); *Niang v. Gonzales*, 492 F.3d 505, 513 (4th Cir. 2007) (same).

There is, however, a distinction between the situations in *Oforji* and *Olowo* and Kone's situation here. In both *Oforji* and *Olowo*, only one parent was in removal proceedings, meaning there was at least the possibility that the other parent could take care of the child in the United States. *Cf. Olowo*, 368 F.3d at 701 (father was available); *Oforji*, 354 F.3d at 618 (father may have been available). Here, *both* parents are in removal proceedings. The BIA somewhat cursorily rejected Kone's attempt to highlight this distinction, noting that because the whereabouts of the petitioner's husband in *Oforji* were unknown, it was not clear that the children in that case could have stayed with their father. The BIA did not address *Olowo*, however. On remand, the BIA should do so, in light of *Olowo*'s implication that there may be a claim for constructive deportation when both, not just one, parent is in proceedings. *See Olowo*, 368 F.3d at 701 ("[W]hen there is a parent who is available to care for the daughters in the United States, they are under no compulsion to leave. Accordingly, the facts here do not support a claim for derivative asylum."); *see also Gatimi v. Holder*, 606 F.3d 344, 349 (7th Cir. 2010)

("*Gatimi II*") (noting that in *Olowo* and *Oforji*, "the children had one parent with legal status and so were not subject to removal."); *Benyamin v. Holder*, 579 F.3d 970, 977 (9th Cir. 2009) (remanding to BIA to consider whether father qualified for derivative asylum based on threat of FGM to daughter, in case where both parents were subject to removal).

### B. Kone's Claim of Direct Persecution

In addition to asserting a derivative claim, Kone also made a separate argument to the BIA: that FGM of Mariam would constitute *direct* persecution of her parents cognizable under the Convention Against Torture.[5] The BIA did not address this argument in its decision, but should have. Kone's direct-persecution argument finds support in recent case law, both in our circuit and in others.

In *Gatimi v. Holder*, 578 F.3d 611 (7th Cir. 2009) ("*Gatimi I*"), a Kenyan man had defected from a criminal political/religious organization in Kenya and faced retribution for having done so. He sought asylum (along with his wife and daughter as derivative applicants) based on a fear of returning to Kenya where

---

[5]  It is clear that FGM constitutes persecution under the asylum and withholding of removal standards, and torture under the CAT. *See Oforji*, 354 F.3d at 615 n.2; *Nwaokolo v. I.N.S.*, 314 F.3d 303, 308-09 (7th Cir. 2002) (stating FGM is a "horrifically brutal procedure"). It is also clear that mental suffering can qualify as torture. *See* 8 C.F.R. § 208.18(a)(1).

he claimed the persecution could continue. *Id.* at 613-14. Part of Gatimi's claim was that his wife would be subjected to FGM if returned to Kenya, because the organization compelled wives of defectors to undergo the procedure. *Id.* We found that this potential harm to Gatimi's wife could "constitute persecution *of him*." *Id.* at 617 (emphasis in original). We noted:

> Genital mutilation of one's wife, unless one happens to be a supporter of the practice, is a way to punish one, and so the menace to Mrs. Gatimi is a legitimate component of Mr. Gatimi's case. To send her back to Kenya to face female genital mutilation would be to enable persecution of him.

*Id.*; *see also Gatimi II*, 606 F.3d at 348 ("*persecution of Mrs. Gatimi can constitute persecution of Mr. Gatimi*, and so her fear of persecution is relevant to his (and therefore their) claim for asylum.") (emphasis added). While not directly analogous to the situation before us—we see no evidence in this case indicating that Mariam would be subjected to FGM as a way to "punish" her family—the *Gatimi* cases are relevant here because they address the concept that genital mutilation of a petitioner's family member can constitute direct, as opposed to derivative, persecution of the petitioner. Kone made this argument on appeal, and the BIA should consider it.[6]

---

[6] Both of the *Gatimi* cases were decided after the BIA issued its decision in this case.

Other circuits have also recognized the possibility that the prospect of FGM of one's child can constitute harm to an unwilling parent and similarly remanded to the BIA for further consideration of the issue. In *Kone v. Holder*, 596 F.3d 141, 143 (2d Cir. 2010) (no relation to petitioner in this case), a woman from Cote d'Ivoire sought asylum based on, *inter alia*, the fear that her daughters would be forcibly subjected to FGM against her wishes were they to go to that country. The Second Circuit remanded the case to the BIA, and indicated that it could consider "whether the mental anguish of a mother who was herself a victim of genital mutilation who faces the choice of seeing her daughter suffer the same fate, or avoiding that outcome by separation from her child" would qualify as sufficient persecution of a petitioner so as to warrant a grant of asylum under 8 C.F.R. § 1208.13(b)(1)(iii)(B). *Id.* at 153. The court recognized, as Kone did in the argument she made to the BIA here, that such a theory is "distinct from a claim of derivative asylum." *Id.*[7]

The Sixth Circuit has similarly indicated that a petitioner can potentially qualify for relief in her own right based on threats of FGM to a child. In *Abay v. Ashcroft*, 368 F.3d 634, 636 (6th Cir. 2004), an Ethiopian mother and daughter sought asylum and withholding of removal based on the fear that the daughter would be

---

[7] Kone made her direct-persecution claim to the BIA for relief under the CAT, not asylum, but the theory is the same—that harm to the child can constitute direct persecution of the parents who are unable to stop it.

subjected to FGM, as her mother had previously been, if they were deported to Ethiopia. Surveying previous BIA decisions, the court found that Abay could demonstrate persecution based on the harm she would suffer by "being forced to witness the pain and suffering of her daughter" if she were subjected to FGM. *Id.* at 642. The BIA itself has also addressed the possibility. *See Matter of Dibba*, No. A73 541 857 (BIA Nov. 23, 2001) (mother's argument that being forced to allow FGM of daughter in Gambia would cause her mental suffering was sufficient to reopen case).

In light of the precedent we have discussed above, Kone may have a viable claim that FGM of Mariam against her will constitutes direct persecution of her parents. In light of the BIA's silence on the theory, it is "impossible to be confident" that Kone's claim has been "fully understood or analyzed." *Chitay-Pirir v. I.N.S.*, 169 F.3d 1079, 1081 (7th Cir. 1999). Remand is appropriate so that the BIA can more fully address Kone's direct-persecution claim in light of the case law we have set forth. *See Gonzales*, 547 U.S. at 186; *Chen*, 604 F.3d at 335; *Gomes*, 473 F.3d at 752.

## III. CONCLUSION

We Grant the petition for review, Vacate the BIA's decision, and Remand for further proceedings consistent with this opinion.