In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1623

YI XIAN CHEN,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petition for Review of a Decision
of the Board of Immigration Appeals.
No. A088-524-548

ARGUED NOVEMBER 2, 2012—DECIDED JANUARY 18, 2013

Before MANION, WILLIAMS, and HAMILTON, *Circuit Judges.*

MANION, *Circuit Judge.* Yi Xian Chen illegally entered the United States in 2006. Shortly thereafter, his wife gave birth to the couple's second child in China. Chinese authorities then forcibly sterilized her. In the United States, Chen filed for asylum, withholding of removal, and relief under the Convention Against Torture, arguing that he suffered persecution when he learned

that his wife had been forcibly sterilized. The Department of Homeland Security sought to remove Chen to China. While his removal proceedings were pending, Chen began practicing Falun Gong, and then supplemented his requests for relief from removal arguing that he feared future persecution because of his Falun Gong activities. Concluding that Chen had not suffered past persecution and lacked a well-founded fear of future persecution, an Immigration Judge denied Chen's requests for relief. The Board of Immigration Appeals affirmed, and Chen petitioned this court for review. Because the agency did not err, we deny Chen's petition for review.

## I. Background

Chen and his wife, nationals of the People's Republic of China, had their first child in 2001. In 2003 and 2005, Chen unsuccessfully attempted to enter the United States to seek employment. In 2006, after his wife became pregnant again, Chen illegally entered the United States at the Mexican border. Some months later, Chen's wife gave birth to the couple's second child in China. Fearing persecution, Chen's wife hid at her uncle's home. Nevertheless, Chinese authorities discovered and forcibly sterilized her.

Subsequently, Chen filed a timely application for asylum. Thereafter, the Department of Homeland Security ("DHS") initiated removal proceedings against Chen.

In 2009, while his removal proceedings were pending, Chen began practicing Falun Gong.[1] He then added his practice of Falun Gong as an additional basis for his requests for asylum, withholding of removal, and protection under the Convention Against Torture. Chen testified that he practices Falun Gong primarily in his home, but that sometimes he practices outside. Chen also testified that he reads materials and has passed out fliers related to Falun Gong. Chen testified that if he were sent back to China he would continue to practice Falun Gong at his home or at a farm adjacent to his house. During Chen's testimony, the Immigration Judge ("IJ") asked him, "[W]hy couldn't you go over to China and practice Falun Gong inside your house?" Chen responded, "Because if I were to practice outside, I will be able to emit more energy."

Based on news reports concerning Chinese authorities' treatment of Falun Gong practitioners, Chen expressed concern that he would be detained, beaten, and interrogated if he were returned to China. In support, Chen offered reports from the State Department indicating that the Chinese government harshly represses Falun

---

[1] Chen testified that Falun Gong is not a religion but rather the practice of certain physical exercises which contribute to his mental, physical, and ethical well-being. *See also Iao v. Gonzales*, 400 F.3d 530, 532 (7th Cir. 2005) ("[Falun Gong's] emphasis is on spiritual self-perfection through prescribed physical exercises . . . .").

Gong.[2] Falun Gong practitioners are specifically targeted for arbitrary arrest, detention, and harassment. Detainees have "credibly reported that officials used electric shocks, beatings, shackles, and other forms of abuse." The State reports say that, according to estimates, at least 6,000 Falun Gong practitioners have been imprisoned and almost 3,000 have died from torture since 1999. Additionally, over 100,000 Falun Gong practitioners have been subjected to "re-education" through labor camps during the same time period. Leaders appear to be treated most harshly. But even "the mere belief in the discipline (even without any public manifestation of its tenets) has been sufficient grounds for practitioners to receive punishments ranging from loss of employment to imprisonment." We have had occasion to discuss some of these reports previously. *See Shan Zhu Qiu v. Holder*, 611 F.3d 403, 407-08 (7th Cir. 2010). We observed that, while the reports indicate that most practitioners of Falun Gong are punished administratively, the reports also reveal that such punishment can be quite harsh and may amount to persecution.[3] *Id.*

---

[2] *See* Dep't of State, *County Reports on Human Rights Practices for 2008: China (includes Tibet, Hong Kong, and Macau)* (Feb. 25, 2009); Dep't of State, *Int'l Religious Freedom Report 2007: China (includes Tibet, Hong Kong, and Macau)* (Sept. 2007); Dep't of State, *County Reports on Human Rights Practices for 2006: China (includes Tibet, Hong Kong, and Macau)* (Mar. 6, 2007).

[3] The DHS cites the International Religious Freedom Report 2007 for the proposition that Chinese authorities permit Falun

(continued...)

The IJ issued an oral decision concluding that Chen could not establish past persecution or a well-founded fear of future persecution merely based on his wife's forced sterilization. The IJ also concluded that Chen failed to carry his burden of establishing a well-founded fear of future persecution based on his practice of Falun Gong. The IJ reasoned that Chen had not proved a reasonable possibility of mistreatment because he provided no explanation for why his practice would likely come to the attention of Chinese authorities. The IJ also denied Chen's requests for withholding of removal and protection under the Convention Against Torture. Although Chen did not request it, the IJ granted voluntary departure.

Chen appealed to the Board of Immigration Appeals.[4] While his appeal was pending, Chen moved to remand on the basis of new evidence. Specifically, Chen offered undated photographs of himself at what he claimed to

---

[3] (...continued)
Gong practitioners to perform Falun Gong activities in public parks without interference apart from police observation. But the DHS neglects to mention that this section of the report only discusses the practice of Falun Gong in the special administrative region of Macau—far from where Chen's family lives in Fuzhou. This omission makes the citation misleading.

[4] Chen did not appeal the denial of his request for protection under the Convention Against Torture to the Board. Thus, he cannot—and does not—raise that issue here. *See Raghunathan v. Holder*, 604 F.3d 371, 379 (7th Cir. 2010); *Korsunskiy v. Gonzales*, 461 F.3d 847, 849 (7th Cir. 2006) (citing 8 U.S.C. § 1252(d)(1)).

be a Falun Gong rally and a letter, purportedly from his wife, stating that Chinese authorities were aware of his Falun Gong activities in the United States and would imprison him if he returned.

The Board affirmed the IJ's ruling. The Board observed that the background country evidence, that is, the State Department's reports, does show that Falun Gong is illegal in China and harshly suppressed by the Chinese government. Nevertheless, the Board concluded that Chen lacked a well-founded fear of future persecution because he "did not testify that he could not continue to [practice Falun Gong in his home] in China . . . ." Thus, the Board found that Chen failed to "establish that he would engage in activities upon his return to China that would attract the attention of the authorities, and that could result in harm rising to the level of persecution . . . ."

Additionally, the Board denied Chen's motion to remand because it thought that the new evidence was unreliable. The Board reasoned that the photographs were undated and, further, that Chen did not provide a foundation for them in his supporting affidavit. The Board also found that the letter from Chen's wife was unsworn and uncorroborated, self-serving inasmuch as the record indicated that Chen's wife harbored a desire to come to the United States, and from an interested party who was not subject to cross-examination. The Board did remand Chen's removal proceedings, however, but did so solely to allow the IJ to provide Chen with advisory statements that must accompany a grant of voluntary removal.

Chen then sought review by this court. While this appeal was pending, the IJ held a hearing on the remand order. Chen did not request voluntary departure, and the IJ reinstated the order of removal. That order has not been appealed.

## II.  Discussion

Where, as here, the Board relies on the findings of the IJ but adds its own analysis, we review the IJ's decision as supplemented by the Board's additional reasoning. *Milanouic v. Holder*, 591 F.3d 566, 570 (7th Cir. 2010). Legal conclusions are reviewed *de novo*, whereas factual findings are only reviewed for substantial evidence. *Chen v. Holder*, 604 F.3d 324, 330 (7th Cir. 2010). Under the latter standard, we will only reverse if the evidence compels a contrary result; we will not overturn the agency's findings merely because we might have decided the case differently. *Id.*; *see also Bueso-Avila v. Holder*, 663 F.3d 934, 937 (7th Cir. 2011) (observing that reversal is warranted only if the evidence is "'so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.'" (quoting *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992))).

Chen advances two alternative challenges to the agency's denial of his requests for asylum and withholding of removal. Specifically, Chen contends that the agency erred in ruling that he could not establish past persecution based on his grief over his wife's sterilization and the couple's inability to have future biological children. Alternatively, Chen argues that the agency

erred in holding that he could not establish a well-founded fear of future persecution because of his practice of Falun Gong. In addition, Chen contends that the Board abused its discretion when it denied his motion to remand for consideration of new evidence related to his practice of Falun Gong.

## A.  Asylum and Withholding of Removal

The legal principles controlling Chen's request for asylum are well-established. "The Attorney General has discretion to grant an alien asylum under the Immigration and Nationality Act if the alien qualifies as a 'refugee.'" *Chen*, 604 F.3d at 330 (quoting 8 U.S.C. § 1158(b)(1)). "A refugee is a person who is unwilling or unable to return to his native country 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Id.* (quoting 8 U.S.C. § 1101(a)(42)(A)). If Chen establishes that he suffered past persecution for a protected reason, a presumption arises that he also has a well-founded fear of future persecution for the same reason. 8 C.F.R. § 208.13(b)(1).

If Chen cannot establish past persecution or if his fear of future persecution is unrelated to any past persecution, he bears the burden of establishing that his fear of future persecution is well-founded. *Id.* at (a), (b)(1), (b)(2). This requires Chen to demonstrate "that his fear of persecution is both 'subjectively genuine and objectively reasonable.'" *Chen*, 604 F.3d at 330 (quoting

*Bolante v. Mukasey*, 539 F.3d 790, 794 (7th Cir. 2008)). Chen can satisfy the objective prong of this standard by presenting specific facts showing that there is a reasonable possibility that he would suffer mistreatment on account of a protected basis if he were returned to China. 8 C.F.R. § 208.13(b)(2)(i)(B); *Chen*, 604 F.3d at 330 (quoting *Sayaxing v. I.N.S.*, 179 F.3d 515, 520 (7th Cir. 1999)).

Chen contends that he can establish past persecution on account of his wife's forced sterilization because he wanted to have more children and suffered significant emotional distress upon learning of her sterilization. We do not discount the severity of Chen's emotional distress in light of his government's heinous conduct. But we have deferred to the Attorney General's ruling that an applicant cannot establish that he was persecuted merely because his spouse was forcibly sterilized. *See Chen*, 604 F.3d at 331 (citing *Matter of J-S-*, 24 I. & N. Dec. 520, 534-35 (BIA 2008)). Chen does not ask us to reconsider our deference to *Matter of J-S-*. And to hold that the emotional distress naturally arising from a spouse's forced sterilization amounts in itself to persecution would be to effectively abrogate the Attorney General's ruling. We agree with the decisions of other circuits, based on *Matter of J-S-*, that such emotional distress is not enough. *See Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1233 (10th Cir. 2012) (finding that the Board did not err in concluding that emotional distress based on a spouse's forced sterilization and ectopic pregnancy does not amount to past persecution); *Shi Liang Lin v. U.S. Dept. of Justice*, 494 F.3d 296, 309 (2d Cir. 2007)

(holding that the "profound emotional loss" arising from a spouse's forced abortion does not in itself qualify an applicant for "refugee" status). Emotional distress based on a spouse's forced sterilization does not fit the definition of persecution used in this circuit—namely, "'detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, torture, behavior that threatens the same, and non-life-threatening behavior such as torture and economic deprivation if the resulting conditions are sufficiently severe.'" *Shan Zhu Qiu*, 611 F.3d at 405 (quoting *Capric v. Ashcroft*, 355 F.3d 1075, 1084 (7th Cir. 2004)). And Chen has not offered any evidence that he was persecuted for resisting China's population-control program. *See Matter of J-S-*, 24 I. & N. Dec. at 537-38. In fact, Chen admitted that he did not actively protest his wife's sterilization, which occurred after he left China, and that the Chinese government never targeted him while he was in China. Consequently, the record does not compel a finding that Chen suffered past persecution.

Because Chen did not suffer past persecution, he carries the burden of proving that he has a well-founded fear of future persecution. Chen contends that he has a well-founded fear of persecution based upon his recently acquired practice of Falun Gong.[5] The DHS

---

[5] It is unclear whether Chen is also arguing that he has a well-founded fear of future persecution based on his wife's forced

(continued...)

does not argue that a Falun Gong practitioner cannot qualify for asylum or that Chen is not a bona fide Falun Gong practitioner.[6] Nor does the DHS dispute that Chen's fear of persecution is subjectively genuine. Thus, the only question for us is whether the agency erred in finding that Chen failed to meet his burden of proving that his fear of persecution is objectively reasonable.

The IJ and Board concluded that Chen did not establish a reasonable possibility that he would be persecuted because he failed to offer evidence that his practice of Falun Gong in China would attract the attention of the authorities. The record does not compel a contrary result. Chen testified that, if he were sent back to China, he would practice Falun Gong at home or at a farm next to his house.[7] If Chen had testified that he planned to practice Falun Gong at a public park, then a reasonable fact-finder would be hard-pressed to reject the inference that the authorities would likely become aware of Chen's practice. But such an inference does not neces-

---

[5] (...continued)

sterilization. But Chen did not raise this argument before the Board, so he is precluded from raising it here. *See Raghunathan*, 604 F.3d at 379; *Korsunskiy*, 461 F.3d at 849 (citing 8 U.S.C. § 1252(d)(1)).

[6] The IJ found Chen's testimony credible concerning his practice of Falun Gong.

[7] But Chen did not say that he intended to limit his practice to these locations out of any concern that he might be persecuted if he practiced elsewhere.

sarily follow from Chen's testimony that he might practice Falun Gong at a farm adjacent to his house. Therefore, we cannot say that the evidence compels a finding that Chen's practice of Falun Gong in China likely would attract the attention of the authorities and, consequently, create a reasonable possibility of persecution. And Chen's case is distinguishable from *Shan Zhu Qiu*, where the alien, a Falun Gong participant, offered credible evidence that Chinese authorities had come to his house and he had been forced to escape by jumping off a balcony, and that the authorities had served an official summons on him at his home. 611 F.3d at 404. The agency's decision to deny Chen's request for asylum does not amount to error. Furthermore, because Chen did not meet his burden of proof regarding his asylum request, "it necessarily follows that he cannot make the 'more stringent' showing required to prove" that he is entitled to withholding of removal. *Soumare v. Mukasey*, 525 F.3d 547, 552 (7th Cir. 2008) (quoting *Shmyhelskyy v. Gonzales*, 477 F.3d 474, 481 (7th Cir. 2007)).

**B.  Chen's Motion to Remand**

Chen also contends that the Board abused its discretion when it denied his motion to remand. Chen's motion was based on new evidence; specifically, photographs of Chen at what he claimed to be a Falun Gong rally and a letter, purportedly from his wife, stating that Chinese authorities were aware of his Falun Gong activities in the United States and would imprison him if he returned. "We must affirm the Board's denial [of a motion to remand] 'unless it was made without a rational ex-

planation, it inexplicably departed from established policies, or it rested on an impermissible basis.' " *Pop v. I.N.S.*, 279 F.3d 457, 460 (7th Cir. 2002) (quoting *Man v. I.N.S.*, 69 F.3d 835, 837 (7th Cir. 1995)).

First, concerning the photographs offered by Chen, the Board concluded that they were not reliable because they are undated and Chen did not provide any description or foundation for them in his supporting affidavit. We cannot say that this conclusion is irrational. Second, with regard to the letter from Chen's wife, the Board concluded that it was not reliable because it was unsworn and uncorroborated, self-serving, and from an interested party who could not be cross-examined. *See Matter of H-L-H- & Z-Y-Z-*, 25 I. & N. Dec. 209, 214-15 (BIA 2010), *abrogated on other grounds by Hui Lin Huang v. Holder*, 677 F.3d 130 (2d Cir. 2012). It is unclear whether Chen's wife had access to any method whereby she could authenticate her statements without alerting Chinese authorities to the contents of her letter. Other authentication certificates, attached to Chinese documents in the record, suggest that Chinese notaries are government officials. *See, e.g.,* AR 280, 289. Nevertheless, because the statements are uncorroborated and the record suggests that they are self-serving, we cannot say that the Board's decision was irrational. *See Song Wang v. Keisler*, 505 F.3d 615, 622 (7th Cir. 2007) (finding no abuse of discretion where the IJ afforded little weight to a certificate from the applicant's village committee, stating that he must be sterilized upon return to China on account of his two United States-born children, because the certificate was unauthenticated and obtained for the purpose of the hearing); *Qin Wen Zheng v. Gonzales*,

500 F.3d 143, 149 (7th Cir. 2007) (ruling that the Board did not abuse its discretion in declining to consider a foreign document that was questionable on its face, unauthenticated, and supported only by a spouse's affidavit).

### III. Conclusion

Substantial evidence supports the decision to deny Chen's applications for asylum and withholding of removal. And the Board did not act irrationally in denying Chen's motion for remand. Therefore, we AFFIRM the decision of the Board of Immigration Appeals, and DENY Yi Xian Chen's petition for review.[8]

---

[8] Our decision may have little impact on whether Chen is actually removed from the United States. At oral argument, counsel for the Attorney General stated that China generally will not issue travel documents to an alien ordered removed from the United States until all of the alien's potential avenues of relief are exhausted. And China has a well-documented history of delaying or blocking repatriation of their nationals who are illegally present in the United States. *See* Alison Siskin, *CRS Report for Cong., Immigration-Related Detention: Current Legislative Issues* 6 n.38 (Jan. 12, 2012); Office of Inspector Gen., Audit Report No. 06-33, *Detention and Removal of Illegal Aliens* 17 n.37 (Apr. 2006); Office of Inspector Gen., Audit Report No. 02-41, *Immigration and Naturalization Serv. Institutional Removal Program* 27 (Sept. 2002).