In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-2760

ERLIN BUESO-AVILA,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A098-962-408

ARGUED SEPTEMBER 8, 2011—DECIDED NOVEMBER 29, 2011

Before MANION, ROVNER, and TINDER, *Circuit Judges.*

MANION, *Circuit Judge.* Erlin Bueso-Avila, a citizen of
Honduras, sought asylum and withholding of removal.
He alleged that he had suffered persecution at the hands
of the Mara Salvatrucha street gang on account of his
evangelical Christian religious beliefs and his church
youth group membership. The Immigration Judge and
the Board of Immigration Appeals denied Bueso-Avila's

application because he had failed to establish that the gang's actions were on account of his religion or social group membership. Bueso-Avila then petitioned this court for review. Because there is substantial evidence in support of the Board's decision, we must deny Bueso-Avila's petition.

I.

In May 2005, while a teenager, Bueso-Avila left Honduras and entered the United States illegally. Shortly thereafter, he was caught and the Department of Homeland Security began removal proceedings against him. He then filed an application for asylum, withholding of removal, and protection under the Convention Against Torture. The Immigration Judge conducted a hearing on the merits of Bueso-Avila's application. At the time of the hearing, Bueso-Avila was nineteen years old. Because he was the sole witness to testify at the hearing, we summarize his testimony.

Bueso-Avila lived with his family in the city of San Pedro Sula, Honduras. Though born and raised Catholic, at the age of 15 he joined a youth group with an evangelical Christian church called La Cosecha, the largest church in Honduras. Bueso-Avila would meet with his church youth group twice a week to study and discuss the Bible. According to Bueso-Avila, evangelization and recruiting young people in the local community are essential parts of the mission of his church. He testified that before the meetings, his church group would walk around the neighborhood

with their Bibles and invite other people to their meetings and away from gang life. Bueso-Avila said that "[o]ur purpose in doing this was to get young people to see the ways of God, and to start doing good things instead of smoking marijuana, robbing, and killing people like the gang members did." Sadly, Bueso-Avila's neighborhood was plagued by the presence of the violent Mara Salvatrucha, or MS-13, street gang.[1] Bueso-Avila testified that the gang members believed that the church's proselytization was encroaching on their territory by drawing away youths who were potential gang recruits, and that this led to several threats and attacks from the gang.

He testified that his first encounter with the gang occurred after his third church group meeting. Some gang members approached and tried to recruit him to the gang. He refused the request and was able to run away from the gang members unharmed. A second encounter occurred after another church group meeting. Gang members again approached Bueso-Avila and made threatening comments, and then grabbed him and beat him. Fortunately, Bueso-Avila was able to escape after a man wielding a machete scared away the gang members. A similar attempt by the gang to recruit him occurred on another occasion, but again, Bueso-Avila escaped after a stranger approached.

---

[1] For more on this criminal street gang, see Luz E. Nagle, *Criminal Gangs in Latin America: The Next Great Threat to Regional Security and Stability?*, 14 Tex. Hisp. J.L. & Policy 7 (2008).

Bueso-Avila also testified that other members of his church youth group were threatened by the gang's recruitment efforts. Two members of the church group were forced to join the gang after the gang threatened their families and even allegedly murdered the brother of one church group member.

Bueso-Avila's most serious encounter with the MS-13 gang was when he was traveling home from work by bus. He testified that gang members were waiting for him at the bus station. They approached him and said that he needed to join the gang. After he refused, the gang beat him severely, and left him lying on the ground. He testified that he received bruises and cuts, and almost lost consciousness. Later, a gang member told Bueso-Avila's mother that if the family talked to the police, they would be harmed. Bueso-Avila still has scars from the attack.

Following this final attack, Bueso-Avila left Honduras, traveled by foot and by train across Guatemala and Mexico, and entered the United States where he has a sister living in Florida. In May 2005, he arrived in the country, but was apprehended shortly after crossing the border.

Bueso-Avila testified that he is afraid to go back to Honduras because he believes that the MS-13 gang would still hurt him. He also does not believe that the Honduran police would be able to protect him.[2]

---

[2] "[A] finding of persecution ordinarily requires a determination that government authorities, if they did not actually
(continued...)

Apparently, his parents and family have moved to another part of Honduras to avoid the danger, but there is no evidence in the record about whether the gang has influence in that part of the country.

Following the hearing, on October 22, 2007, the Immigration Judge issued a written opinion denying Bueso-Avila's application for asylum, withholding of removal, and protection under the Convention Against Torture. On June 30, 2009, the Board of Immigration Appeals affirmed the Immigration Judge's decision, holding that Bueso-Avila had failed to establish that the gang's harassment and attacks were on grounds protected by the Immigration and Nationality Act.

Bueso-Avila petitioned this court for relief. In a short order, we remanded the case to the Board of Immigration Appeals for reconsideration in light of two recent intervening cases which indicated that social visibility is not required to establish membership in a particular social group. *See Gatimi v. Holder*, 578 F.3d 611, 615-16 (7th Cir. 2009), and *Benitez Ramos v. Holder*, 589 F.3d 426, 430 (7th Cir. 2009). On remand, the Board issued an opinion on July 6, 2010. It first noted that the *Gatimi* and *Ramos* cases did not affect the outcome of its decision. The Board then again denied Bueso-Avila's applica-

---

[2] (...continued)
perpetrate or incite the persecution, condoned it or at least demonstrated a complete helplessness to protect the victims." *Galina v. INS*, 213 F.3d 955, 958 (7th Cir. 2000). This issue, however, is not before us on appeal.

tion, ruling that he had "failed to establish past persecution on account of any ground protected under the Act." The Board's decision rested on its finding that there was insufficient testimonial and documentary evidence establishing a nexus between the harm Bueso-Avila suffered and his religion or his membership in the evangelical Christian church youth group. Specifically, the Board found that the violent actions of the gang members instead "stemmed from the efforts of the gang members to forcibly recruit him," and that even if the gang members had a mixed motive, Bueso-Avila had not established that his religion or membership in the youth group "was at least one central reason" for his persecution. The Board then dismissed Bueso-Avila's application for asylum, withholding of removal, and protection under the Convention Against Torture. Bueso-Avila now petitions our court for review.

## II.

On appeal, Bueso-Avila challenges the Board's decision denying his application for asylum and withholding of removal; he does not challenge the denial of his application for protection under the Convention Against Torture. To establish eligibility for asylum, an alien must demonstrate that he suffered persecution or has a well-founded fear of persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); 8 U.S.C. § 1158(b)(1) (B)(i); 8 C.F.R. § 1208.13. If an applicant fails to establish eligibility for

asylum, he "necessarily cannot satisfy the more stringent requirement for withholding of removal under 8 U.S.C. § 1231(b)(3)." *Ahmed v. Ashcroft*, 348 F.3d 611, 615 (7th Cir. 2003).

We must affirm the Board's decision if it is supported by substantial evidence. *Id.* "Applying that standard, we assess whether the [Board's] determination was 'supported by reasonable, substantial, and probative evidence on the record considered as a whole,' and reverse only if the evidence compels a contrary conclusion." *Id.* (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). In other words, for reversal, the evidence must be "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Elias-Zacarias*, 502 U.S. at 483-84; *see Margos v. Gonzales*, 443 F.3d 593, 597 (7th Cir. 2006). Thus "we are not at liberty to overturn the Board's determination simply because we would have decided the case differently." *Jamal-Daoud v. Gonzales*, 403 F.3d 918, 922 (7th Cir. 2005).

To show that he was persecuted by the MS-13 gang "on account of" his religion or membership in a particular social group, Bueso-Avila must put forth direct or circumstantial evidence that the gang was motivated by these factors. *See Martinez-Buendia v. Holder*, 616 F.3d 711, 715 (7th Cir. 2010); *see also Elias-Zacarias*, 502 U.S. at 483 ("[S]ince the statute makes motive critical, he must provide *some* evidence of it, direct or circumstantial."). But it is not necessary that the persecutor be motivated primarily on account of one of the grounds in the Act; "an individual may qualify for asylum if his

or her persecutors have more than one motive as long as one of the motives is specified in the Immigration and Nationality Act." *Ndonyi v. Mukasey*, 541 F.3d 702, 710 (7th Cir. 2008) (internal quotation omitted).

Bueso-Avila argues that he presented sufficient evidence to establish that the MS-13 gang members were motivated, at least in part, by his evangelical Christianity or his membership in the church youth group.[3] In support of this position, Bueso-Avila points to the fact that the Immigration Judge found him to be a credible witness and that he testified to the following: that Bueso-Avila was only threatened and injured by the gang after he joined his church youth group; that other members of his church youth group were also threatened and injured by the gang and that the youth group was eventually disbanded because of the danger; that the gang knew he was a religious individual because he walked around the neighborhood with his Bible before church meetings; that the gang was unhappy with Bueso-Avila's proselytization and with the church's recruitment efforts; and that the gang wanted to stop the church's recruiting and eliminate it as a competitor. Contrary to Bueso-Avila's contention, the Board considered this evidence and found that it only suggested that the gang's actions were from its efforts to forcibly

---

[3] The Board did not address whether an evangelical Christian church youth group is "a particular social group" for purposes of the Act, and, similarly, we need not address this issue either.

recruit young people to the gang, and did not stem from a prohibited factor. The issue before us, then, is whether the evidentiary record "compels the conclusion" that the gang targeted Bueso-Avila, at least in part, because of his religion or church group membership. *See Elias-Zacarias*, 502 U.S. at 483. Upon review of the record, we cannot say that we are so compelled.

The evidentiary record does not contain direct evidence of the motivations of the MS-13 gang members. There is no testimony that Bueso-Avila's attackers ever mentioned his religion or church youth group membership, nor that they gave any indication that they were aware of or even cared about these factors. The fact that some of the threats against Bueso-Avila occurred after church group meetings does not necessarily mean that the gang members were reacting to Bueso-Avila's religious beliefs; in fact, the most serious attack against Bueso-Avila occurred as he was coming home from work, not from his church. In addition, Bueso-Avila's documentary evidence presented did not indicate that the MS-13 gang had the motive of targeting people on the basis of religion or participation in church youth groups. Bueso-Avila's testimony that the gang members knew about his religion and church youth group membership, and that the gang members persecuted him on account of these characteristics, is an inference based on circumstantial evidence. Now this is a possible and legitimate inference to make. But we cannot say that this inference is supported by circumstantial evidence that is "so compelling that no reasonable fact-finder could fail to find" that the MS-13

gang was motivated to persecute Bueso-Avila on the basis of his religion or group membership. *Jamal-Daoud v. Gonzales*, 403 F.3d 918, 922 (7th Cir. 2005). Based on all the evidence presented by Bueso-Avila, it is also legitimate to infer that the gang members were either unaware of or did not care about Bueso-Avila's religious beliefs and church group membership. Instead, they may have threatened and attacked him in an attempt to recruit him into the gang because he was one of several local youths who were potential recruits—which is not a protected basis under the Act. Consequently, there is not a sufficient basis to overturn the Board's determination.

This conclusion is consistent with case law involving forced recruitments. In the Supreme Court case of *INS v. Elias-Zacarias*, 502 U.S. 478, 479-80 (1992), the applicant was seeking asylum on account of his political beliefs, and alleged that he had been persecuted for refusing to be recruited to a political organization. But the Supreme Court held that the applicant's refusal to agree to the forced recruitment was insufficient by itself to show that his persecutors acted "on account of" his political views. *Id.* at 482-84.

On the other hand, in *Martinez-Buendia v. Holder*, 616 F.3d 711, 719 (7th Cir. 2010), we found that there was sufficient evidence to establish that the applicant's persecutors were motivated by the applicant's political beliefs when she refused to be recruited to the political party of her persecutors. But in that case, not only was there documentary evidence that her persecutors saw

the applicant as a political opponent, but there was evidence that her persecutors recognized her refusal to cooperate as a political stance, and, accordingly, increased their violence against her because of her continued political stand against them. *Id.* at 717.

Similarly, in *Gomes v. Gonzales*, 473 F.3d 746, 754-55 (7th Cir. 2007), we found that the record established that there was persecution on the basis of religion. In that case, there was "a great deal of evidence" supporting the claim that the applicant was being targeted because of his religious beliefs, including the existence of anonymous callers threatening his life and demanding that he change his religion, and the fact that his attackers gave him an ultimatum to either renounce Christianity or face death after they broke into his home. *Id.* at 754.

The facts of this case fall closer to the facts of *Elias-Zacarias* than to those of *Martinez-Buendia* and *Gomes*. Like the applicant in *Elias-Zacarias*, Bueso-Avila's persecutors were attempting to recruit him to their ranks, but there was no additional evidence that his persecutors knew of—or even if they did know, that they were motivated by—Bueso-Avila's religious beliefs or church group membership. And unlike the applicants in *Martinez-Buendia* and *Gomes*, Bueso-Avila did not present any additional evidence supporting the fact that his persecutors recognized his religious beliefs or church group membership and targeted him because of these factors.

In sum, because our review of the Board's decision is "highly deferential," we can overturn the Board "only

when the evidence compels that contrary conclusion, and not simply because we would have decided the case differently." *Capric v. Ashcroft*, 355 F.3d 1075, 1086 (7th Cir. 2004) (internal citations and quotations omitted). Here, there is insufficient evidence in the record compelling a finding that the MS-13 gang targeted Bueso-Avila on account of his evangelical Christian religious beliefs or his church youth group membership. Instead, there is substantial evidence in the record to support the finding that the gang threatened and harmed Bueso-Avila simply because he was a youth who refused to join their street gang, regardless of his religious activities. Consequently, while we recognize the terrible situation created in Honduras by the activity of the MS-13 gang, we must affirm the Board's decision denying Bueso-Avila's application for asylum. Furthermore, because Bueso-Avila cannot establish eligibility for asylum, he necessarily cannot satisfy the higher standard for withholding of removal. *See Zhou Ji Ni v. Holder*, 635 F.3d 1014, 1020 (7th Cir. 2011).

## III.

For these reasons, we affirm the decision of the Board of Immigration Appeals, and deny Bueso-Avila's petition for review.