NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 24, 2012[*]
Decided October 24, 2012

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

RICHARD D. CUDAHY, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 12-1687

| | |
|---|---|
| MINGHONG SUN,<br>    *Petitioner,* | Petition for Review of an Order of the<br>Board of Immigration Appeals. |
| *v.* | No. A088-345-058 |
| ERIC H. HOLDER, JR.,<br>Attorney General of the United States,<br>    *Respondent.* | |

**O R D E R**

Minghong Sun, a Chinese citizen, petitions for review of an order of the Board of Immigration Appeals upholding an immigration judge's denial of his applications for asylum, withholding of removal, and relief under the Convention Against Torture. He

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

asserts that he will be persecuted if removed to China based on his opposition to China's family-planning policy. We deny the petition.

At his hearing before the IJ, Sun gave the following account. In early 2007, his girlfriend, Duanrong Zhang became pregnant in violation of a provincial (Fujian) policy prohibiting out-of-wedlock births. At 21, Sun was a year too young to marry under Chinese law, but the couple made plans to marry when Sun was old enough. Zhang's parents opposed the union, however, citing the couple's incompatible astrological signs. Zhang soon moved in with Sun and his parents, but Zhang's father, who was a government official in a neighboring village, reported her pregnancy to local authorities. Family-planning officials visited Sun's home the following month, telling his father that Zhang would need to abort her pregnancy. The officials returned the next month intending to take Zhang away to have an abortion, but she and Sun escaped through the back door while his father fought off the officials. Sun's father then paid a friend $40,000 to help smuggle the couple out of the country, and they reached the United States by way of France, Central America, and Mexico. Due to the advanced stage of her pregnancy, Zhang stayed behind in Mexico while Sun crossed the border near Hidalgo, Texas, where he was apprehended. Sun later learned that Zhang had returned to China, telling her family that she had miscarried in Mexico. Sun fears returning home because Zhang's father has publicized his intention to have Sun prosecuted for abducting Zhang.

The IJ denied Sun's applications for asylum, CAT relief, and withholding of removal. The IJ found Sun's testimony "extremely confusing and vague" and noted that Sun failed to meet his burden under the REAL ID Act to produce reliable corroborating evidence because his account was inconsistent with affidavits that had been submitted by his father and Zhang. And if Sun's story were assumed true, the IJ added, Sun failed to establish that he had been persecuted based on his resistance to China's family-planning policy. Even a married man, the IJ stated, does not suffer per se persecution based on the forced abortion of his unborn child, and Sun was not personally harmed in the run-in with family-planning officials. Sun also failed to establish a well-founded fear of future persecution, the IJ concluded, because he did not show that any threats made by Zhang's father would be attributable to the government. The IJ was unable to determine from Sun's "weak and confusing" testimony whether Zhang's father's had sufficient clout to follow through on his threat to have Sun prosecuted for kidnapping, and in any event the reaction of Zhang's father apparently stemmed from personal animus rather than any protected ground. The Board of Immigration Appeals upheld the IJ's decision in all respects, finding Sun's story not credible and concluding that even if his account were fully credited Sun failed to establish past or fear of future persecution.

In this petition, Sun first assails the IJ's determination that he did not establish past persecution. He takes issue with the IJ's statement at his hearing that "only a couple that's married that is faced with a possible abortion may argue they've been persecuted" and equates his committed relationship with Zhang with a legal marriage. He maintains that he is entitled to asylum "as a partner of a victim directly affected by family planning laws" and suggests that family planning officials' attempt to force Zhang to have an abortion constituted harm sufficient to establish persecution.

Sun waived this argument, however, by failing to raise it before the Board. *See Sarmiento v. Holder*, 680 F.3d 799, 803–04 (7th Cir. 2012). In any event, as the IJ noted, even the husbands of women who have been subjected to coercive population-control measures are no longer considered *per se* victims of persecution; the Attorney General abrogated the "spousal bootstrapping" rule in 2008. *See Jin v. Holder*, 572 F.3d 392, 396–97 (7th Cir. 2009) (discussing *Matter of J-S-*, 24 I. & N. Dec. 520, 536–38 (A.G. 2008)). And substantial evidence supports the Board's conclusion that Sun did not establish that he was persecuted on account of resistance to the family-planning policy. Persecution "involves . . . the use of significant physical force against a person's body, or the infliction of comparable physical harm without direct application of force . . . or nonphysical harm of equal gravity," *Stanojkova v. Holder*, 645 F.3d 943, 948 (7th Cir. 2011), but Sun left China before he was detained, arrested, or otherwise harmed. *See Qiu v. Holder*, 611 F.3d 403, 404, 406 (7th Cir. 2010). Nor was the harm to his father sufficient to compel a finding that Sun was persecuted; an asylum applicant cannot establish past persecution based on harm to another person unless that harm is for the purpose of punishing the applicant. *See Zhou Ji Ni v. Holder*, 635 F.3d 1014, 1018 (7th Cir. 2011); *Gatimi v. Holder*, 578 F.3d 611, 617 (7th Cir. 2009).

Sun further argues that, even if he did not show past persecution, his fear of Zhang's father is sufficient to establish a well-founded fear of future persecution. He asserts that the IJ's and Board's disregard of the father's influence reflects a "cultural ignorance of the powerful reach of cadres in rural China" and highlights his own father's warning that the police have threatened to punish him for his crimes if he returns to China. But Sun did not present evidence that Zhang's father had authority or clout sufficient to trigger Sun's prosecution. Moreover, to be eligible for asylum Sun must fear persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, *see* 8 U.S.C. § 1158(b)(1)(B)(i); *Bueso-Avila v. Holder*, 663 F.3d 934, 937 (7th Cir. 2011), and as the Board and IJ pointed out, Sun's account suggests that Zhang's father dislikes him only because Sun absconded with his daughter to Mexico.

Finally, Sun maintains that the Board erred by discounting his testimony because parts of it conflicted with the affidavits he submitted to the IJ. These inconsistencies—ranging from the date of the family-planning officials' second visit to the location of his family's home—are in his view either immaterial or attributable to translation errors. But this argument is beside the point; the IJ and the Board both found that even if Sun's account were credited, he nevertheless failed to establish either past persecution or a well-founded fear of future persecution.

DENIED.