**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3019
_____

LUIS EDGARDO CASTILLO-MEJIA,
                              Petitioner
v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
                              Respondent
_____

On Petition for Review of an Order of
the Board of Immigration Appeals
(Agency No. A208-286-331)
Immigration Judge: Dinesh C. Verma
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 8, 2019
_____

Before: SHWARTZ, KRAUSE, and FUENTES, Circuit Judges.

(Filed: July 19, 2019)
_____

OPINION[*]
_____

SHWARTZ, Circuit Judge.

    Luis Edgardo Castillo-Mejia petitions for review of the order of the Board of

_____

    [*]This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Immigration Appeals ("BIA") dismissing his appeal of the denial of his asylum application. For the reasons that follow, we will deny the petition.

I

Castillo-Mejia, a native and citizen of Honduras, is a practicing evangelical Christian. From a young age, he was involved in youth and worship ministries, attended regular congregational activities, and invited people into the church.

When Castillo-Mejia was fourteen years old, gang members began insulting him and his religion. He stopped going to school after gang members looked for him there. The next year, the gang threatened to kill him and his family if he did not join the gang. On one occasion, four or five gang members approached him as he was leaving his house and threatened that if he did not join the gang, they would kill him. They said he "should not follow God because the gang is god." A.R. 207. Another evening, eight gang members surrounded Castillo-Mejia on his way home, made their guns visible to him, told him that he had to join the gang or he and his family would pay, and yelled "God can't protect you," "where is your god now," and "We are God." A.R. 207.

Within a few months of the final incident, Castillo-Mejia entered the United States without permission. He was issued a notice to appear, which stated that the time and date of his hearing were "to be set." A.R. 235-36. He was then served with a notice indicating the date and time of a hearing, and appeared before an Immigration Judge ("IJ"). He failed to appear at a subsequent hearing and was ordered removed in absentia. At his request, the IJ vacated the removal order and reopened his case. Castillo-Mejia then applied for asylum, withholding of removal, and protection under the Convention

2

Against Torture ("CAT").

Castillo-Mejia conceded removability.[1]  He then appeared before a different IJ for a merits hearing on his applications for relief.  The IJ found Castillo-Mejia credible but determined that he was ineligible for asylum[2] because: (1) "the[] verbal threats that respondent endured do not rise to the level of past persecution," A.R. 75; and (2) he has not demonstrated likelihood of future persecution due to a protected ground because: (a) he has not shown "that his religion is the essential or principle [sic] reason that he will be targeted if he is returned to the country of Honduras," A.R. 77; and (b) his proposed particular social group—"young Honduran Evangelical Christian males who have actively refused to join a gang based on their faith," A.R. 77—"lacks particularity as it constitutes a potentially large and diffuse segment of society," and "the characteristic of having an opposition to the gangs, even if it's based upon religious opposition, does not meet the particularity requirement, as it is too broad and diverse," A.R. 78.

Castillo-Mejia appealed the denial of his asylum application to the BIA.  The BIA dismissed the appeal, concluding that: (1) the gang's insults and threats did not amount to

---

[1] Castillo-Mejia claims the BIA violated his due process rights because he was not allowed to designate a country of removal.  Since he did not raise this issue before the BIA, we lack jurisdiction to review it.  Lin v. Att'y Gen., 543 F.3d 114, 121-22 (3d Cir. 2008).

Even if he had not waived this argument, it would fail because Castillo-Mejia has not shown "substantial prejudice resulted from the alleged procedural error[]." Delgado-Sobalvarro v. Att'y Gen., 625 F.3d 782, 787 (3d Cir. 2010).  Castillo-Mejia was born in and is a citizen of Honduras, so Honduras is undoubtedly a proper country of removal. See 8 U.S.C. § 1231(b)(1)(B)-(C).  Moreover, Castillo-Mejia has not suggested that any country other than Honduras should or could be designated the country of removal.

[2] The IJ also determined that Castillo-Mejia was ineligible for withholding of removal and CAT protection.

past persecution; (2) Castillo-Mejia failed to demonstrate a likelihood of future persecution because his proposed particular social group lacked particularity; and (3) the IJ correctly applied the "central reason" standard, A.R. 4 n.2 (internal quotation marks omitted), in its determination that Castillo-Mejia's "evangelical Christian faith was not a 'central reason' the gang members threatened him and therefore is not likely to be in the future," A.R. 4 (footnote omitted). Castillo-Mejia petitions for review of the denial of his asylum request.

II[3]

A

---

[3] Castillo-Mejia asserts that the IJ and BIA lacked jurisdiction over his removal proceedings because the notice to appear did not specify the time and place of the removal hearing. Castillo-Mejia did not raise this argument before the agency and, since this is not a jurisdictional issue, see Nkomo v. Att'y Gen., No. 18-3109, --- F.3d. ---, 2019 WL 3048577, at *1-3 (July 12, 2019), he has waived this argument, Lin, 543 F.3d at 121-22. Even if he had preserved the issue, however, it would fail because he subsequently received a notice of hearing and appeared at the scheduled hearing. See Nkomo, 2019 WL 3048577, at *1-3.

The IJ had jurisdiction over Castillo-Mejia's immigration proceedings under 8 C.F.R. § 1208.2, and the BIA had jurisdiction over the appeal pursuant to 8 C.F.R. §§ 1003.1(b) and 1240.15. We have jurisdiction over final orders of the BIA under 8 U.S.C. § 1252.

When the BIA issues its own opinion on the merits, we review its decision, not that of the IJ. Mahn v. Att'y Gen., 767 F.3d 170, 173 (3d Cir. 2014). However, where, as here, the BIA expressly adopts portions of the IJ opinion, we review both the IJ and BIA decisions. See S.E.R.L. v. Att'y Gen., 894 F.3d 535, 543-44 (3d Cir. 2018); Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir. 2009). We review legal determinations de novo and "accept factual findings if supported by substantial evidence," meaning we must "uphold the agency's determination unless the evidence would compel any reasonable fact finder to reach a contrary result." Sesay v. Att'y Gen., 787 F.3d 215, 220 (3d Cir. 2015) (citation omitted).

4

Under the Immigration and Nationality Act, an alien who enters the United States without permission is removable. See 8 U.S.C. §§ 1182(a)(6)(A)(i), 1227(a)(1)(A). A removable alien may be eligible for asylum if he demonstrates that he is "unable or unwilling to return to, and is unable or unwilling to avail himself . . . of the protection of, [the country to which he would be removed] because of persecution or a well-founded fear of persecution on account of . . . religion, . . . [or] membership in a particular social group." 8 U.S.C. § 1101(a)(42)(A); see id. § 1158(b)(1)(B)(i); see also Garcia v. Att'y Gen., 665 F.3d 496, 503 (3d Cir. 2011). The BIA concluded that Castillo-Mejia failed to show that he suffered past persecution or that he will likely suffer future persecution based upon his religion and refusal to join a gang.

B

1

Castillo-Mejia argues that the BIA's determination that he did not suffer past persecution is not supported by substantial evidence. To prevail, Castillo-Mejia must establish "that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992). He has not done so.

"Persecution" encompasses "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993). The BIA's determination that the gang's threats "did not rise to the level of persecution," A.R. 3, is supported by substantial evidence. Castillo-Mejia testified that after insulting him and his religion for about a year, on two or three

5

occasions groups of gang members threatened that they would kill him if he did not join the gang. The gang never physically harmed him and he was able to escape when the gang members pursued him. The fact that the gang members were armed during the final incident does not compel a contrary conclusion, see Gomez-Zuluaga v. Att'y Gen., 527 F.3d 330, 342 (3d Cir. 2008) (explaining that the fact that guerillas who briefly detained petitioner were armed "does not suggest the guns were brandished or used in [a] threatening manner"), and "[a]busive treatment and harassment, while always deplorable," do not necessarily amount to persecution, Jarbough v. Att'y Gen., 483 F.3d 184, 191 (3d Cir. 2007). "[P]ersecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional," and Castillo-Mejia has not demonstrated that the record compels a determination that he suffered "severe" conduct amounting to persecution. Fatin, 12 F.3d at 1240.

2

Castillo-Mejia also claims that the BIA erred in its determination that he did not establish a likelihood of future persecution on a protected ground. An applicant has a well-founded fear of future persecution if there is a "reasonable possibility" that he will suffer it. 8 C.F.R. § 1208.13(b)(2)(iii). In addition, an alien must provide evidence that the persecutor's motive arises from the alien's protected trait. Elias-Zacarias, 502 U.S. at 483; Matter of N-M-, 25 I. & N. Dec. 526, 531 (BIA 2011) ("[A]n alien must demonstrate that the persecutor would not have harmed the applicant if the protected trait did not exist."). "[A]sylum may not be granted if a protected ground is only an incidental, tangential, or superficial reason for persecution of an asylum applicant."

6

Ndayshimiye v. Att'y Gen., 557 F.3d 124, 130 (3d Cir. 2009) (internal quotation marks omitted).

Substantial evidence supports the BIA's determination that because Castillo-Mejia's evangelical Christian faith was not a "central reason" for the gang's past threats, it is not likely to be a central reason for any future threats. See, e.g., Bueso-Avila v. Holder, 663 F.3d 934, 936, 938 (7th Cir. 2011) (holding religion was not a central reason where applicant claimed gang members knew about his religion and church group membership but record lacked evidence of gang members' motivations). Castillo-Mejia's description of the gang's threats show that the gang sought his membership and attempted to use threats to get him to join. The comments about his religion were aimed at expressing their view that his religion will not shield him from the gang but his religion was not the reason for the threats.

The BIA also did not err in its determination that Castillo-Mejia's proposed particular social group—"young Honduran evangelical Christian males who have actively refused to join a gang based on their faith"—is not cognizable. As the BIA noted, those targeted for resisting gang recruitment are not generally recognized as members of a cognizable particular social group.[4] See, e.g., Paiz-Morales v. Lynch, 795 F.3d 238, 244 (1st Cir. 2015) (concluding that proposed group of individuals opposed to gang membership lacked particularity because "[a] group consisting of all Guatemalan

---

[4] A particular social group must be: "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question.'" S.E.R.L., 894 F.3d at 540 (quoting Matter of M-E-V-G-, 26 I. & N. Dec. 227, 237 (BIA 2014)).

citizens who do not sport gang colors and tattoos is by definition too amorphous and overbroad to be particular"); Rodas-Orellana v. Holder, 780 F.3d 982, 991-93 (10th Cir. 2015) (holding that proposed group of "El Salvadoran males threatened and actively recruited by gangs, who resist joining because they oppose the gangs" lacked social distinction). Despite Castillo-Mejia's qualifier of "youth," his proposed group still lacks particularity and social distinction. See, e.g., Zaldana Menijar v. Lynch, 812 F.3d 491, 498-99 (6th Cir. 2015) ("'El Salvadoran male youth, who were forced to actively participate in violent gang activities for the majority of their youth and who refused to comply with demands to show their loyalty through increasing violence' . . . lacked social distinction." (citation omitted)); Mayorga-Vidal v. Holder, 675 F.3d 9, 15 (1st Cir. 2012) ("We have repeatedly deferred to the BIA's reasonable determination that the features encompassing 'youths who resist gang recruitment' are simply too subjective and open-ended to describe a sufficiently particular, legally cognizable social group."); Mendez-Barrera v. Holder, 602 F.3d 21, 25, 27 (1st Cir. 2010) (determining that "young [El Salvadoran] women recruited by gang members who resist such recruitment" lacked particularity because "[t]here are, for example, questions about who may be considered 'young,' the type of conduct that may be considered 'recruit[ment],' and the degree to which a person must display 'resist[ance]'" (first, third, and fourth alterations in original). Thus, the BIA did not err in concluding that Castillo-Mejia did not demonstrate a reasonable possibility of future persecution based on his religion or by holding that he was not a member of a particular social group.

III

8

For the foregoing reasons, we will deny Castillo-Mejia's petition for review.