In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2354

HONGTING LIU,

*Petitioner*,

v.

LORETTA E. LYNCH,
Attorney General of the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
No. A201 015 295

ARGUED APRIL 28, 2015— DECIDED JUNE 11, 2015

Before FLAUM, KANNE, and WILLIAMS, *Circuit Judges*.

FLAUM, *Circuit Judge*. Hongting Liu, a Chinese citizen in her mid-twenties, petitions for review of the denial of her application for asylum and withholding of removal based on religious persecution. Because substantial evidence does not support the Immigration Judge's (IJ) adverse credibility finding, which was

upheld by the Board of Immigration Appeals, we grant the petition and remand for further proceedings.

## I. Background

Liu came to the United States on a student visa in May 2011. She did not attend the school designated on her visa and instead took free English classes in Chicago. Ten months after her arrival, she filed for asylum based on the religious persecution she faced in China. An asylum officer denied her application, and she was charged as removable because she did not attend the school listed on her visa.

At her removal hearing, Liu testified about the basis for her application, starting with her conversion to Christianity while in college in northeastern China. She testified that her conversion helped lift her out of a depression following her uncle's death. For the remainder of her studies, she attended meetings every Sunday at an "underground family church" near her campus, and after graduating and returning home she attended a new house church. Her parents did not know that she converted to Christianity or attended house-church meetings weekly.

Liu went on to describe the events underlying her claim of persecution, beginning with her arrest at her hometown house church. In January 2011 the police raided the church and asked the congregants why they were gathered. After one congregant replied that they were discussing Christianity, the police declared the meeting an illegal gathering and arrested all seven people in attendance. Liu was taken to the police station and detained for four days in a room apart from her fellow church-goers.

She testified that she was mistreated during her detention. When she refused to respond to questions about details of the house church, she said that she was slapped by an interrogating officer. She also was administered "shock[s]" when the police used an unspecified device to pierce the skin at her throat and was beaten in the back and head with batons, after which she temporarily lost consciousness. At a subsequent interrogation, she was slapped by another officer for refusing to answer questions about connections between her church and "any supporting country organization." Another officer touched her breasts.

Liu was released from detention after her parents paid a substantial sum of money (5,000 yuan, or approximately 800 dollars). Liu was told to cease her church activity and report to the police every week. When her parents brought her home from the police station, she was unable to eat, so they took her to the hospital for treatment, where she was diagnosed with a concussion.

At the hearing, one focus of inquiry was inconsistencies in Liu's testimony about the timing of her applications for both a visa and passport. She initially testified that she applied for her visa through an "intermediary agency" in March 2011. The government's attorney challenged that testimony, stating that her visa application in fact was dated January 26, 2011—the same time when she testified that she had been detained after her arrest at the house church. Liu responded that she did not know exactly when her visa application was submitted because her parents had made arrangements with the agency, not her. Next, when the IJ asked how she was able to get a passport if, after her release, she had to report weekly to the police, she

said that she got it "in a secret manner." After the IJ pointed out that her passport was issued before her arrest, she responded, "Well, I didn't express myself correctly. I didn't say that—I should have said that the visa was obtained in a very secret manner, not the passport." In addition, at another point in the hearing, Liu denied intending to come to the United States before her arrest, but later said that she applied for a visa before "all these troubles" and began collecting materials to support her application as early as 2010.

Also at the hearing, Liu presented testimony from a family friend with whom she lived and attended church in Chicago every Sunday. He testified about her interest in Christianity back in China, where he had discussed religion with her while sharing a meal with her family in 2009.

As for corroborating documents, she supplemented her application with (1) a medical record from a hospital, dated the day of her release from police custody, stating that she had been "beaten" and suffered a concussion; (2) an undated letter from her mother saying that the police had contacted her to bail Liu out of jail for participating in a religious gathering, and that she later took Liu to the hospital; (3) an undated letter from a fellow church member in her hometown saying that she was arrested with Liu and that they had been "interrogated, beaten and electrocuted," that their church was destroyed, and that they regularly had to report to the police station; (4) a "Special Cash Receipt" dated the day of Liu's release from detention for a 5,000 yuan bond, paid by Liu's mother; and (5) a devotional booklet from her Chinese church in Chicago.

The IJ denied Liu all relief. The IJ found Liu's testimony neither persuasive nor sufficient to meet her burden of proof. He referred to "minor inconsistencies" during her testimony—inconsistences that, he acknowledged, "do not directly go to the heart of Respondent's claim" yet nonetheless suggest one "tr[ying] to correct herself and . . . tell a different story." The IJ doubted Liu's testimony because (1) she testified that she came to the United States both to study but also on account of having been persecuted in China; (2) she waited ten months to apply for asylum instead of seeking an attorney and more promptly gathering evidence—a pace that, in the IJ's view, was not consistent with someone fleeing persecution; (3) Liu hid her affiliation with Christianity from her parents, yet her witness—a practicing Christian—testified that she asked him in front of her parents about religious practices in the United States; (4) Liu testified in regard to the raid on the church meeting that she refused to answer questions about the purpose of the gathering, despite it being obvious from the circumstances that a religious event was underway; and (5) she changed her story about the timing of applications that she filed for her student visa and passport. The IJ did, however, comment that Liu testified in a "fairly forceful manner," and said that the abuse she described, if believed, would amount to persecution.

The IJ also concluded that Liu did not submit adequate, reliable evidence to overcome what the IJ described as her incredible testimony. He noted that most of her documents were "last minute corroborative evidence obtained from China submitted for purposes of her final hearing" and deserved no evidentiary weight. The IJ then discounted the medical report,

which was submitted with her original application, because it stated only that she had incurred a head injury and lost consciousness and that she could "not clearly recall the circumstances of the injury." In the IJ's view, she could have obtained statements from others about her religious practices and mistreatment by the authorities, as well as a detailed statement from her parents.

The Board of Immigration Appeals upheld the IJ's ruling in a short opinion. The Board found that the IJ did not clearly err in drawing an "adverse credibility inference from [Liu's] lack of candor in her testimony" about the timing of her applications for her visa and passport, and these discrepancies were "material" to her claim of persecution. The Board also upheld the IJ's findings that the medical report reflected circumstances of injury that were "unknown," that the letters from Liu's mother and fellow church member "lacked detail and were procured for the purposes of litigation," and that the bond payment receipt lacked authentication and evidence about chain of custody.

## II. Discussion

In her petition for review, Liu primarily asserts that the IJ's adverse credibility determination is flawed. The assessment of credibility is crucial in an asylum case because an applicant's testimony—if credible, specific, and persuasive—can establish her burden of proof without corroboration. See 8 U.S.C. § 1158(b)(1)(B)(ii).

Substantial evidence does not support four of the IJ's five reasons for discounting Liu's testimony. The first inconsistency cited by the IJ—that Liu changed the nature of her reason for

coming to the United States from studying to fleeing persecution—is illusory. Dual motives for remaining in the United States are not inconsistent. See Gjerazi v. Gonzales, 435 F.3d 800, 809 (7th Cir. 2006) (criticizing IJ for not recognizing that applicant developed intent of applying for asylum after leaving home country); Pavlova v. I.N.S., 441 F.3d 82, 88, 89 n.5 (2d Cir. 2006) (recognizing that applicants can have dual purposes for coming to the United States).

The second inconsistency relied upon by the IJ was Liu's ten-month delay in filing her asylum application—a delay that the IJ deemed incompatible with one purporting to flee persecution. But the statute allows an asylum applicant one year to file, see 8 U.S.C. § 1158(a)(2)(B), and Liu filed her application within that time period. Drawing any inferences against her credibility for filing in the tenth month of the year is arbitrary and unwarranted. See Pavlova, 441 F.3d at 88–89.

The third source of confusion for the IJ was that Liu would conceal her conversion from her parents. "I see no reason why the Respondent would hide her affiliation with Christianity or her baptism [from her parents] if it, in fact, had truly occurred," he said, adding that Liu's "religion or possible conversion to Christianity may have been part of the discussion" with her family friend and parents at the meal in China. But Liu's friend testified explicitly that Liu's own religious practices were not part of the discussion, so the IJ's opinion about Liu's willingness to tell her parents about her faith is speculative and conjectural, and therefore not a proper basis for an adverse credibility finding. See Jiang v. Gonzales, 485 F.3d

992, 995 (7th Cir. 2007); Pramatarov v. Gonzales, 454 F.3d 764, 765–66 (7th Cir. 2006).

The fourth inconsistency cited by the IJ is difficult to understand. The IJ seemed to doubt that the police would question Liu about a gathering that they knew to be illegal or that Liu would refuse to answer questions about her participation in the church, having already been arrested there. But this reasoning does not take into account Liu's testimony that the police questioned her about more than just her participation—asking about the number of congregants, the name of the pastor, and ties to supporting country organizations—and assumes a particular type of behavior that both she and the police would be expected to follow in such circumstances. The scenario is not as implausible as the IJ assumes. See Jiang, 485 F.3d at 994 (granting petition in case where applicant was arrested at house-church meeting, interrogated about the meeting, and beaten by police); Zhao v. Mukasey, 540 F.3d 1027, 1028 (9th Cir. 2008) (granting petition in case where applicants were arrested while practicing religion, interrogated, and mistreated when they refused to answer questions).

The IJ's final reason for discrediting Liu—her inconsistent testimony about the timing of her visa and passport applications—is not independently sufficient to support a general finding of incredibility. Liu did technically testify inconsistently at the hearing about the timing of the applications. Nevertheless, this inconsistency alone is not so material as to discredit her entire narrative about her underlying claim of persecution—which covers Liu's conversion, arrest, and mistreatment by the police. Even after the passage of the REAL ID Act, IJs must distinguish between inconsistencies that are

material and those that are not. See Krishnapillai v. Holder, 563 F.3d 606, 616–17 (7th Cir. 2009); see also Lin v. Holder, 630 F.3d 536, 544 (7th Cir. 2010) (upholding adverse credibility finding when applicant testified inconsistently about timing of event central to persecution claim).

Because an applicant's testimony alone "may be sufficient to sustain the applicant's burden without corroboration," the IJ's flawed credibility determination, which went uncorrected by the Board, requires that the case be remanded for a reassessment of Liu's credibility. See 8 U.S.C. § 1158(b)(1)(B)(ii); Nadmid v. Holder, 784 F.3d 357, 361 (7th Cir. 2015); Rapheal v. Mukasey, 533 F.3d 521, 528–30 (7th Cir. 2008).

If on remand the Board determines that Liu's corroborating evidence must be reviewed under the REAL ID Act, see 8 U.S.C. § 1158(b)(1)(B)(ii), then a few points should be kept in mind. The IJ believed that Liu could have submitted additional statements about her mistreatment by the authorities and a detailed statement from her parents. But the IJ did not consider whether further evidence about her detention was reasonably available since there were no witnesses other than the police. See Chen v. Holder, 715 F.3d 207, 211–12 (7th Cir. 2013); Durgac v. Gonzales, 430 F.3d 849, 853 (7th Cir. 2005). And although she submitted a medical report corroborating that she had been beaten and suffered a head injury, the IJ discounted it because it did not refer to the detention, without explaining why a medical record reasonably should specify the role played by the police in causing the injury. See Jiang, 485 F.3d at 996–97 (improper for IJ to discount medical records "based on his own assumptions regarding what information is included in

Chinese hospital documents"). Further, it was questionable for the IJ to find that Liu could have submitted a statement from her parents, while not acknowledging that she in fact had submitted a letter from her mother. The IJ discredited the letter because it had been procured only recently and in anticipation of Liu's hearing, but the IJ did not explain why Liu reasonably would have a contemporaneous letter from her mother about her mistreatment. Finally, the IJ did not explain why it was "obvious" that the letter from Liu's mother was based on what Liu had told her to write; the letter recounted events that Liu's mother reported having personally experienced.

### III. Conclusion

We grant the petition and remand for further proceedings consistent with this opinion.