In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1261

LISHOU WANG,

*Petitioner,*

*v.*

LORETTA E. LYNCH,
Attorney General of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A088-577-598

ARGUED AUGUST 4, 2015 — DECIDED OCTOBER 26, 2015

Before POSNER, KANNE, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.* Lishou Wang, a 51-year-old Chinese citizen, petitions for review of the denial of his applications for asylum and withholding of removal based on his resistance to China's coercive population-control policy. An immigration judge found that Wang did not testify credibly about the crux of his claim, which involves a beating he suffered while struggling to prevent his wife from being forced

to receive what he believed to be a sterilization procedure. But the IJ misunderstood Wang's testimony about the nature of the procedure his wife ultimately received—the implantation into her arm of a contraceptive device. Further the IJ erred by concluding, alternatively, that Wang could not show past persecution because he resisted only his wife's forced contraceptive implant as opposed to a forced abortion or sterilization. We grant the petition and remand for further proceedings.

## I. BACKGROUND

We recount the facts primarily from Wang's testimony during his final removal hearing. In China Wang worked as a farmer in a village in the eastern province of Shandong. He married in 1988, and the following year his wife gave birth to a daughter. Three months later government officials required his wife to have an intrauterine device ("IUD") implanted. But five years later the IUD "fell off," and she again got pregnant. Under government policy, though, too little time had passed since having their first child, so officials forced her to abort the pregnancy. (Wang does not rely on this abortion for his asylum claim.) By 2000, Wang and his wife were able to have another child, a son.

The events at the heart of these proceedings occurred three months after their son's birth, when government officials went to their house and threatened to sterilize either Wang or his wife. Wang protested and fought against the officials, who pushed him to the floor, kicked him, and beat him with batons until he passed out from "severe, excruciating pain" in his leg. At some point he heard a neighbor telling the officials to stop before they killed him. Wang was taken to a hospital, where he learned that his foot was bro-

ken. In the meantime officials had returned to his house and forced his wife to undergo a procedure in which a contraceptive called "Norplant" was surgically inserted into her arm.[1] (This procedure engendered considerable confusion at the hearing, as Wang first labeled it "tubal ligation" before clarifying that he meant the "birth control implant on my wife's upper arm" or "skin implant.") His wife became ill from the implant, and the couple had no further children.

Nine years later Wang entered the United States on a three-month business visitor's visa that he had procured from a snakehead. More than a year after his entry, he applied for asylum and withholding of removal, contending that he had been persecuted for resisting the government officials' demands to sterilize him or his wife. The Department of Homeland Security referred his application to an IJ and charged him with removability for overstaying his visa, *see* 8 U.S.C. § 1227(a)(1)(B). Wang conceded the charge and renewed his requests for relief.[2]

Wang supported his testimony with documents about the ordeal. He included an affidavit in which he described

---

[1] According to an uncredited pamphlet in the record entitled "Facts About Norplant," Norplant is the brand name of a contraceptive consisting of 6 small capsules that are implanted under the skin of a woman's upper arm and is 99% effective at preventing pregnancy for up to 5 years. The pamphlet warns that possible side effects of the drug include weight gain, headaches, heavy vaginal bleeding, missed periods, stomach pain, chest pain, leg pain, trouble breathing, and pus or bleeding at the insertion area.

[2] The IJ excused Wang's failure to meet the one-year deadline for filing his asylum application, *see* 8 U.S.C. § 1158(a)(2)(B), (D), and the government has never challenged that determination.

how family-planning officials beat him, broke his foot, and then sterilized his wife while he was in the hospital. He also submitted medical records noting that he had suffered a "bone fracture" and that his wife had undergone "surgery by Norplant device implantation." Finally he added letters from his wife and mother-in-law describing the procedure as "[s]ubcutaneous ligation."

The IJ denied all relief. The IJ credited Wang's testimony about his background, his family, and the circumstances of his departure from China, and acknowledged that Wang "could qualify for asylum based on past persecution if he showed that he resisted a coercive population program." But the IJ did not credit Wang's testimony about the incident with family-planning officials. Instead, the IJ found "clear inconsistency" in Wang's alternative characterizations of his wife's procedure as both a forced tubal ligation and a forced implantation of a birth-control device. These two procedures were so "markedly different," explained the IJ, that there was "no reason to think" they "could be confused in any way." And even if Wang were telling the truth about his wife forcibly receiving a contraceptive, the IJ continued in the alternative, he could not establish past persecution because he had resisted only an implant, not a forced abortion or sterilization. Finally, the IJ added, Wang did not present sufficient corroboration to clarify his inconsistent testimony.

The Board upheld the IJ's decision, finding the adverse credibility determination not clearly erroneous. It explained that the IJ was not required to accept Wang's explanation for confusing tubal ligation with a Norplant implantation, especially since the two procedures were "vastly different." Without credible testimony, the Board concluded, Wang's

documentary evidence was insufficient to meet his burden of proof for asylum or withholding of removal. The Board declined to address the IJ's alternative conclusion that Wang could not qualify for asylum because he had not resisted a forced abortion or sterilization.

## II. ANALYSIS

Because the Board affirmed the decision of the IJ and added its own reasoning, we review both decisions, *see Khan v. Holder*, 766 F.3d 689, 695 (7th Cir. 2014); *Georgieva v. Holder*, 751 F.3d 514, 519 (7th Cir. 2014), bearing in mind that factual and credibility determinations must be supported by substantial evidence, *see Tawuo v. Lynch*, 799 F.3d 725, 727 (7th Cir. 2015); *Liu v. Lynch*, 788 F.3d 737, 741 (7th Cir. 2015), while legal conclusions are reviewed de novo, *see Antia-Perea v. Holder*, 768 F.3d 647, 658–59 (7th Cir. 2014).

*A. Credibility*

Wang persuasively argues that the IJ's credibility finding is flawed because the IJ mistook Wang's innocent confusion over the name of his wife's medical procedure for a conclusion that it never occurred. The IJ improperly discredited Wang's testimony by relying solely on his mistaken labeling of the procedure as "tubal ligation" even though he consistently described it as involving a "skin implant" and "birth control implant on my wife's upper arm."[3] Throughout his testimony Wang explained that he understood the conse-

---

[3] This confusion apparently was exacerbated by interpretation glitches. For example, Wang first testified (through an interpreter) that the family-planning officials had tried to force his wife to have a "vasectomy." When the IJ pressed Wang to clarify, the interpreter interjected and acknowledged that she had erred and meant to say "tubal ligation."

quence of his wife's procedure—whether labeled a "tubal ligation" or a Norplant implantation—to be her inability to conceive another child. Wang emphasized that he thought of Norplant as the same as a "sterilization procedure" or "tubal ligation" because "in China, without certain identification, you cannot remove this implant from your body." Although tubal ligation is in fact different from a contraceptive implant, Wang said nothing at the hearing to suggest that he grasped the difference between the two procedures. Consequently the IJ lacked substantial evidence to use Wang's misunderstanding of the term "tubal ligation" to discredit his uncontradicted testimony that family-planning officials implanted a contraceptive device into his wife's arm.

*B. Past Persecution*

Next Wang challenges the IJ's alternative conclusion—which the Board did not disturb—that even if he credibly had testified about his wife's forced Norplant implantation, he could not demonstrate past persecution as described in 8 U.S.C. § 1101(a)(42) because he did not resist a forced abortion or sterilization. The IJ misconstrued this statute.

Under § 1101(a)(42), if Wang's wife were forcibly sterilized or forced to have an abortion, she could establish per se persecution on account of political opinion. *See Chen v. Holder*, 604 F.3d 324, 331 (7th Cir. 2010). And in that case Wang could seek relief for himself if he had been harmed for resisting her sterilization or abortion. *See id.*; *Jin v. Holder*, 572 F.3d 392, 397 (7th Cir. 2009). But Wang also may seek relief if he suffered persecution for engaging in "other resistance to a coercive population control program," 8 U.S.C. § 1101(a)(42). Under this provision, the precise procedure that Wang's wife underwent as part of that program is beside the point.

China's "coercive population control program" is not limited to only forced abortions and sterilizations; it also forces couples to use birth-control measures such as condoms, pills, and IUDs. *See* Population and Family Planning Law (P.R.C.) (promulgated by the Standing Comm. Nat'l People's Cong., Dec. 29, 2001, effective Sept. 1, 2000), *reprinted in* U.S. Dep't of State, 2007 China Profile of Asylum Claims & Country Conditions; *see also Chen v. Holder*, 737 F.3d 1084, 1089 (7th Cir. 2013). Wang's claim that he was punished for opposing the efforts of family-planning officials to enforce the population-control program, either by sterilizing him or his wife or by implanting a contraceptive device into his wife's arm, thus falls within the protection of the statute.

On remand the Board must assess two matters in the first instance. *See Kone v. Holder*, 620 F.3d 760, 763–64 (7th Cir. 2010). First it must decide whether Wang's attempted interference with the family-planning officials, when they came to his house threatening to implement population-control measures, qualifies as "other resistance." *See, e.g., Cheng v. Att'y Gen. of U.S.*, 623 F.3d 175, 190 (3d Cir. 2010) ("other resistance" includes refusing to comply with demands to abort pregnancy, fleeing town to escape family-planning officials, defying orders to undergo sterilization, frustrating officials' attempts to have IUD inserted, and missing multiple gynecological appointments); *Matter of M-F-W- & L-G-*, 24 I. & N. Dec. 633, 638 (B.I.A. 2008) (resistance "must be assessed against the failures or refusals to comply with official demands to adhere to birth planning policies" and includes acts such as "removing an IUD or failing to attend a mandatory gynecological appointment"); *cf. He v. Holder*, 749 F.3d 792, 796 (9th Cir. 2014) (marrying underage, having children earlier than allowed, and paying partial fine for violating

policy do not constitute the "overt" and "persistent defiance" required to qualify as "other resistance"). Second it must determine whether the harm Wang alleges to have suffered—a beating that led to hospitalization and a broken foot—amounts to persecution. *See, e.g.*, *Chen v. Holder*, 705 F.3d 624, 629 (7th Cir. 2013) (persecution encompasses harm such as beatings, detention, arrest, interrogation, and imprisonment).

### III. CONCLUSION

We GRANT the petition for review and REMAND this case to the Board for further proceedings.